No. 112,479

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOEY HERNDON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Aggravated child endangerment as defined by K.S.A. 2015 Supp. 21-5601(b)(1) requires a showing that the defendant "recklessly caused or permitted a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." Recklessly, as defined by K.S.A. 2015 Supp. 21-5202(j), involves the defendant "consciously disregarding a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

2.

In interpreting statutes, courts give common words their ordinary meanings in order to determine the legislature's intent. Courts strictly construe criminal statutes in favor of the accused so long as doing so results in a reasonable and sensible expression of legislative intent.

3.

When the sufficiency of evidence is challenged in a criminal case, an appellate court reviews the evidence in the light favoring the State. The court will uphold the

1

conviction only if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence at trial.

4.

In considering whether the facts elicited at trial support the verdict, the appellate court may consider the reasonable inference arising from the facts established at trial, but it may not stack inference upon inference to arrive at a fact needed to support the verdict.

5.

Facts can be established at trial either by direct evidence or by circumstantial evidence. Neither is intrinsically more worthy of consideration than the other. In fact, even the most serious crime may be proven by circumstantial evidence.

6.

A conviction cannot be based solely upon inferences. Thus, when a fact is established by circumstantial evidence, the circumstances must be proven and cannot be inferred from other circumstances. But once a fact is proven through circumstantial evidence, the jury may draw reasonable inferences from a fact so proven. Thus, there is no impermissible stacking of inferences if each element of the crime charged is supported by substantial evidence, either direct or circumstantial.

7.

In order to convict a defendant of aggravated child endangerment, the State must prove not only that the defendant's conduct was unjustifiable and a gross deviation from the reasonable standard of care, but also that the defendant acted with the conscious realization that there was a substantial risk that such conduct would place a child in peril. In other words, the State must prove that the defendant acted with indifference to and in disregard of a substantial risk to a child of which the defendant was aware.

2

8.

Typically criminal conduct is premised upon a defendant's culpable conduct, the *actus reus*, coupled with a defendant's culpable mental state, the *mens rea*. In order to convict a defendant of aggravated child endangerment in Kansas, the defendant's culpable mental state must coincide with the act of endangering the child. The defendant's mental state must be shown to include a conscious awareness, followed by a conscious disregard, of a substantial risk that the defendant's conduct will place a child in peril.

9.

Whether evidence should be suppressed in a criminal trial is a legal issue an appellate court considers de novo. In reviewing the district court's factual findings for sufficient evidence to support them, an appellate court does not reweigh the evidence or the credibility of the witnesses.

10.

A timely and specific objection is necessary to preserve an evidentiary issue for appeal. Thus, when a pretrial motion to suppress evidence has been denied, the evidence must also be objected to at the time it is offered during a jury trial in order to preserve the issue for appeal.

11.

The prosecutor's reference in opening statement to a defendant's uncharged crime is rendered harmless when evidence of the crime is admitted at trial without objection.

Appeal from Neosho District Court; DARYL D. AHLQUIST, judge. Opinion filed July 15, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Linus A. Thuston*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and ATCHESON, JJ.

MCANANY, J.: Joey Herndon appeals from his jury convictions of aggravated endangering a child, discharging a firearm at an occupied vehicle, discharging a firearm at an unoccupied dwelling, and two counts of aggravated assault. The district court sentenced Herndon to 38 months in prison. On appeal, Herndon contends: (1) insufficient evidence supported his conviction for aggravated endangering a child; (2) the district court erred by denying his motion to suppress; (3) the prosecutor committed reversible misconduct by referring to an uncharged crime; (4) cumulative trial errors deprived him of a fair trial; and (5) the district court violated his Sixth and Fourteenth Amendment rights by using his prior convictions to increase his sentence without proving them to a jury beyond a reasonable doubt.

Here is the evidence that led to these convictions. Herndon and Tracy Waller had been friends for over 20 years. In May 2011, Herndon was homeless and needed a place to stay. Waller invited Herndon to move into his home in Chanute. This living arrangement ended in about January or February 2012 when Waller evicted Herndon for selling drugs at the house. Thereafter, Herndon and Waller ran into each other occasionally at local taverns, but they were no longer friends.

On the afternoon of March 14, 2013, Waller and his girlfriend, Wanda Fry, were driving in Fry's extended cab pickup truck to a Sonic Drive-In in Chanute. Fry was driving, Waller was seated in the front passenger seat, and Fry's 9-year-old son, who is disabled and unable to speak, was in a car seat in the middle backseat.

Fry approached an intersection and stopped. Herndon approached from another direction driving his girlfriend's gray BMW Z3 convertible. As he turned at the intersection, Herndon waived his arms and began yelling and making profane gestures toward Fry's pickup truck. Fry followed Herndon on South Steuben Avenue.

4

When Fry arrived at 12th Street and South Steuben Avenue, the BMW was parked in the driveway of a residence and Herndon was outside the car and making profane gestures and yelling obscenities at Fry and Waller. Fry stopped the pickup truck at the intersection, and Waller got out and exchanged insults with Herndon. At that point, Herndon reached into the trunk of his car and pulled out a .22 caliber rifle, which he aimed in Waller's direction. Waller retreated to the pickup and told Fry to drive off.

As Fry sped away, Herndon fired a .22 caliber round toward Fry's pickup truck, striking the truck's tailgate. When Fry slammed on the brakes, Waller grabbed the pickup's steering wheel, put his foot on the accelerator, and sped off. Once safely out of sight, Waller called 911, and Fry checked her son to determine that he was not injured. The police discovered a .22 caliber rifle casing at the scene and noted a bullet welt in the tailgate of Fry's truck, which appeared to have been made by a .22 caliber bullet.

After being interviewed by the police, Fry and Waller drove to Waller's residence where Waller noticed his own pickup truck had a flat tire and there were five .22 caliber bullet holes on the side of his house. A neighbor told the police that while sitting on the front porch across the street, she saw the driver of a passing silver or gray sports car fire shots from a rifle pointed out of the car's window. The driver fit Herndon's description. The police discovered several .22 caliber bullets and shell casings along with several bullet holes in the side of Waller's home.

Herndon's daughter, Janae Baker, told the police she spoke with Herndon on the afternoon of the shootings. Herndon told Baker that "he had fired some rounds off at that [expletive], Tracy [Waller]" and that "he wasn't going to get in trouble because [the police] wouldn't find the gun." He told Baker that he had stashed the gun in a storage unit.

Herndon's version of the events was quite different. He claimed that Fry and Waller followed him for several blocks before he pulled into a driveway. Herndon claimed that Fry pulled up directly behind his BMW "close enough to almost hit" it. Waller got out and a verbal confrontation followed. Waller then returned to the truck, and Fry drove about 50 feet before stopping. Fearing Waller was going to "come back and get aggressive again," Herndon claimed he fired a Daisy Red Ryder BB gun twice into the air in order to drive them off.

The State charged Herndon with aggravated endangering a child, criminal discharge of a firearm at an unoccupied dwelling, criminal discharge of a firearm at an occupied vehicle, and two counts of aggravated assault.

During a police interrogation following his arrest, Herndon said he rented a storage unit and consented to a search of the unit. Herndon indicated the key to the padlock on storage unit 57 was in the BMW, which had been impounded by the police. The police asked Herndon whether he had any other storage units, and Herndon denied an interest in any other units.

The next day, the police attempted to open storage unit 57 using Herndon's key. The key did not open the padlock on storage unit 57, so the officer tried the key on various padlocks on other units at the facility. Eventually the key opened the padlock on storage unit 5. The police did not open the door to unit 5 but resecured the lock and applied for a search warrant. When the warrant was obtained, they searched unit 5 and found some statues which had been stolen from Waller and a .22 caliber rifle.

Herndon moved to suppress the evidence seized during the search of the storage unit. After an evidentiary hearing, the district court denied Herndon's motion, finding that Herndon had no standing to challenge the search of storage unit 5 because he told the police he had no interest in that unit.

At trial, the prosecutor told the jury in opening statement about the gun found in storage unit 5 along with "some figurines or statues that Mr. [Waller] had reported stolen earlier."

Herndon was convicted on all counts and sentenced to 38 months in prison. His appeal brings the matter to us.

*Aggravated Child Endangerment*

 K.S.A. 2015 Supp. 21-5601(b)(1) defines aggravated child endangerment as "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." Under K.S.A. 2015 Supp. 21-5202(j), a person acts recklessly "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

In interpreting these statutes we give common words their ordinary meanings in order to determine the legislature's intent. Further, we strictly construe criminal statutes in favor of the accused so long as doing so results in a reasonable and sensible expression of legislative intent. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014).

The district court instructed the jury as follows:

> "Instruction No. 7. Defendant is charged with the crime of aggravated endangering a child in Count 3. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "Number 1. That the defendant recklessly caused [the child] to be placed in a situation in which [the child's] life, body, or health was in danger;
> "Number 2. That [the child] was less than 18 years old; and

7

"Number 3. That this act occurred on or about the 14th day of March, 2013, in Neosho County, Kansas.

"The State must prove that the defendant committed aggravated endangering a child recklessly. . . . [A] defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's action will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Herndon contends there was insufficient evidence to find that he acted recklessly because there was no evidence he knew the child was in the back seat of Fry's truck, and a "defendant cannot consciously disregard a risk his actions could endanger a child if he had no knowledge of the presence of the child." Further, under the statute the risk that a defendant consciously disregards must be substantial.

When the sufficiency of evidence is challenged in a criminal case, we review the evidence in the light favoring the State. We will uphold the conviction only if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

In considering whether the facts elicited at trial support the verdict, we may consider the reasonable inference arising from the facts established at trial, but we may not stack inference upon inference to arrive at a fact that supports the verdict.

"Facts can be established at trial either by direct evidence or by circumstantial evidence. Neither is intrinsically more worthy of consideration than the other. In fact, even the most serious crime may be proven by circumstantial evidence. [Citations omitted.] Nevertheless, a conviction cannot be based solely upon inferences. [Citation omitted.] Thus, when a fact is established by circumstantial evidence, the circumstances must be proven and cannot be inferred from other circumstances. [Citation omitted.] But once a fact is proven through circumstantial evidence, the jury may draw reasonable inferences

8

from a fact so proven. Thus, there is no impermissible stacking of inferences if each element of the crime charged is supported by substantial evidence, either direct or circumstantial." *State v. Taylor*, 34 Kan. App. 2d 889, 891, 126 P.3d 437, *rev. denied* 281 Kan. 1381 (2006).

K.S.A. 2015 Supp. 21-5601(b)(1) requires evidence of reckless conduct that causes a child to be placed at risk. To constitute reckless conduct, K.S.A. 2015 Supp. 21-5202(j) requires a showing that the defendant (1) consciously disregarded a risk which was (2) substantial and (3) unjustifiable and (4) which, under the circumstances, was a gross deviation from the standard of reasonable care. The State showing that the defendant's conduct placed the child at risk is only part of its burden. It must also prove each of these four elements of recklessness in order to convict.

There is no question that Herndon's conduct in shooting a .22 rifle at the back of Fry's truck put Fry's son at risk. The question is whether there is evidence of each statutory element needed to show recklessness.

First, in order to show recklessness, the State had to prove that Herndon *consciously disregarded* the risk that in discharging the rifle at the back of the pickup truck he was placing the child passenger at risk. Our review of the record discloses no direct evidence that Herndon was aware that Fry's son was in the backseat of the pickup truck at the time of the shooting. Further, to infer without direct evidence that Herndon knew the boy was present in the pickup truck would require an impermissible stacking of inferences.

There was evidence that Herndon lived with Waller from May 2011 to about February 2012. During this period Fry lived with her mother, but she was at Waller's house every day for about 2 1/2 years prior to the March 2013 shooting. She was aware that Herndon was a roommate in Waller's home, but "[t]heir relationship was their

9

personal matter. I didn't get involved in it." There is no testimony that Fry's son, who was severely disabled, was ever with her when she went to Waller's house or that Herndon was aware that she had a son. So an inference that Herndon knew that Fry had a son would be tenuous at best.

Further, there is no evidence that Herndon was aware that anyone other than Fry and Waller were in the pickup truck at the time of the shooting. The pickup truck belonged to Fry. Can we stack onto the rather questionable inference that Herndon knew Fry had a child the equally questionable inference that if she was driving her truck around town with her boyfriend she probably had her severely disabled son with her? We think not. There are too many equally probable factual scenarios that dispel the making of any such inference.

It suffices to say that we simply find a dearth of evidence to support the notion that Herndon was aware of the child's presence in the truck. It is hard to imagine how Herndon consciously disregarded the risk to a child he had no reason to think was there.

Further, under the standard for recklessness the risk to be avoided must be substantial. There is always the risk that shooting a .22 rifle at a moving vehicle could cause grave injury or death to an occupant of the vehicle. But under this statute there must be a substantial risk, which the defendant disregarded, that the vehicle had a child occupant. The defendant's actual knowledge of a child's presence would, of course, be sufficient to show a substantial risk. But circumstances establishing the strong likelihood of a child's presence would also satisfy the "substantial risk" component of the statute, so long as a child was, in fact, endangered.

Shooting a firearm in the direction of a child daycare center at 10 a.m. on a school day carries with it the substantial risk of injury to a child. But the same cannot be said if the shot is fired at a daycare center building at midnight. The chance of a child being

10

present at that hour is remote at best. In any event, the likelihood of a child being injured by a shot fired at midnight certainly would not be substantial so as to satisfy this element of the crime.

Herndon's conduct was certainly unjustifiable and a gross deviation from any reasonable standard of care. But there is no evidence that it was done in conscious disregard of a substantial risk of injury to a child occupying the truck.

The aggravated child endangerment statute is perfectly suited to instances in which the defendant knows of the presence of a child but in a gross deviation from the standard of reasonable care consciously disregards a substantial and unjustifiable risk of injury to the child. For example, in *State v. Knight*, No. 105,092, 2012 WL 2325849, at *5 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1133 (2013), the defendant who had been drinking left his 3 1/2-year-old daughter to play and swim at the beach for several hours without supervision. Similarly, in *State v. Martin*, No. 110,556, 2015 WL 5224697, at *7-8 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* September 28, 2015, the defendant drove while intoxicated with an 18-month-old child in the car. *State v. Thomas*, No. 110,571, 2015 WL 569371, at *27 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. ___ (September 23, 2015), involved "'the accidental and unplanned presence of [a child] during the burglary and robbery.'" In *State v. Martinez*, No. 108,441, 2014 WL 3731888, at *7-8 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (July 21, 2015), pointing a loaded gun at a child during a robbery supported conviction for aggravated child endangerment. But we find no Kansas case in which a conviction was upheld when the defendant was unaware of the presence of the child.

New Mexico criminalizes child abuse by negligence or intentional misconduct. See NMSA 1978, Section 30-6-1(D)(1) as amended in 2009, which provides: "Abuse of a child consists of a person knowingly, intentionally or negligently, and without

11

justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health."

In *State v. Gonzales*, 150 N.M. 494, 263 P.3d 271 (Ct. App. 2011), *aff'd on other grounds* 301 P.3d 380 (2013), the defendant was charged and convicted under this New Mexico child endangerment statute when she drove her vehicle while severely drunk, sideswiped one car, and plowed into the rear of another car in which two children were riding in the backseat. One of the children was killed and the other was injured. On appeal, the issue was whether the statute applied when the defendant has no knowledge of the presence of the children and her driving did not specifically endanger these children any more than her driving endangered the general public using the roadway that night.

The New Mexico Court of Appeals cited instances in which the statute was found to apply to intoxicated drivers who had children riding with them at the time or when the intoxicated driver struck another vehicle which he knew was occupied by a child. But applying the statute to a defendant for endangering a child "whose presence was not previously known to the defendant at the time the negligent and dangerous behavior was commenced" was a matter of first impression in the state.

Like our Kansas statute, the New Mexico statute criminalizes child endangerment. Under both statutes, the crime is placing a child in a position of peril, not in causing the actual injury that may follow. The New Mexico court observed that "it is almost impossible to be indifferent to or disregard a risk of which one is not aware." 263 P.3d at 279. The court stated:

> "'Typically criminal conduct is premised upon a defendant's culpable conduct, the *actus reus*, coupled with a defendant's culpable mental state, the *mens rea*.' [Citation omitted.] Even if Defendant commits an act that endangers a child, the State cannot prove

12

child abuse by endangerment unless Defendant's culpable mental state coincided with the act. Defendant must be criminally negligent in placing the child in the direct line of, or at least close to, the danger by recklessly disregarding the substantial and unjustifiable risk to the child's life and health." 263 P.3d at 279-80.

In setting aside the defendant's conviction of child abuse by endangerment, the court concluded:

"Defendant's reckless behavior endangered all persons on the road, but nothing about the situation gives rise to evidence that the children were subject to any particular danger not shared by all fellow motorists and their passengers. Defendant did not specifically act in a criminally negligent manner with regard to endangering these particular children. Rather, she acted that way toward people of all ages on the road that night." 263 P.3d at 279.

The New Mexico Supreme Court reviewed other aspects of this decision in *Gonzales* but did not grant review of this holding on child abuse by endangerment. *State v. Gonzales*, 2013-NMSC-016, 301 P.3d 380 (2013).

We find the reasoning of *Gonzales* persuasive. In the case before us, there is no evidence that Herndon was aware of the presence of Fry's child when he shot at the pickup truck. In the context of our aggravated child endangerment statute, K.S.A. 2015 Supp. 21-5601(b)(1), and the definition of recklessness found in K.S.A. 2015 Supp. 21-5202(j), we conclude that the State failed to establish that Herndon consciously disregarded a substantial risk that his conduct would place Fry's child in peril. Accordingly, we must set aside this conviction and remand to the district court to vacate Herndon's sentence for this conviction.

13

*Motion to Suppress*

Herndon claims the district court erred in denying his motion to suppress the evidence seized during the search of the storage unit. In considering this claim we review the district court's factual findings, without reweighing the evidence or assessing the credibility of the witnesses, to determine whether the findings are supported by substantial competent evidence. Whether the evidence should be suppressed at trial is a legal issue we consider de novo. In reviewing the factual findings, we do not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

As a preliminary matter, Herndon concedes that his counsel failed to renew at trial an objection to admission of the evidence he sought to suppress. A timely and specific objection is necessary to preserve an evidentiary issue for appeal. K.S.A. 60-404; *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009). "[W]hen a pretrial motion to suppress has been denied, the evidence must also be objected to at the time it is offered during the trial in order to preserve the issue for appeal." *State v. Houston*, 289 Kan. 252, 270, 213 P.3d 728 (2009). Although Herndon claims that "[n]owhere in the plain language of [K.S.A. 60-404] is the requirement that the objection be made at trial," we are bound to follow the Supreme Court's rulings in *Houston* and *King*.

Herndon relies on the exception to this rule recognized in *State v. Bogguess*, 293 Kan. 743, 747, 268 P.3d 481 (2012), which relates to a bench trial solely on stipulated facts before the same judge who presided over the suppression motion. This is no safe harbor for Herndon. Here, the case was tried to a jury with the facts not stipulated to and much additional evidence introduced.

Herndon also claims we can review the issue because the constitutionality of the storage unit search is an issue of law arising from proved or admitted facts and is finally

14

determinative of the case. See *State v. Poulton*, 286 Kan. 1, 5, 179 P.3d 1145 (2008). But we do not have uncontested facts here. The district court found that Herndon had no possessory interest in the storage unit where the gun was found, so he had no standing to challenge the search. On appeal Herndon challenges the district court's finding of no possessory interest, so the matter does not come to us on proved or admitted facts.

Finally, Herndon argues consideration of this issue is necessary to prevent the denial of his fundamental right to be free from unreasonable searches. But our Supreme Court recently declined to review the denial of a motion to suppress when the defendant failed to timely renew the objection at trial. See *State v. Moore*, 302 Kan. 685, 697-98, 357 P.3d 275 (2015). In doing so the court stated: "[W]e have applied the timely and specific objection requirement even in cases where an evidentiary claim involved a defendant's constitutional rights. [Citation omitted.]" 302 Kan. at 698. The court concluded: "[I]f we were to overlook the lack of objection in such circumstances, 'these and other caselaw exceptions would soon swallow the general statutory rule.' [Citation omitted.]" 302 Kan. at 698.

But Herndon argues that *Moore* should not control because by the time he is able to move for relief under K.S.A. 60-1507 for his ineffective lawyer's failure to object to this evidence at trial, Herndon probably will have completed his prison sentence. But as a general rule, we do not consider ineffective assistance of counsel claims in a direct appeal. *State v. Rowland*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009). Further, Herndon has not sought a remand for the trial court to consider an ineffective assistance of counsel claim under *State v. Van Cleave*, 239 Kan. 117, 119-20, 716 P.2d 580 (1986).

In any event, even if the issue were properly preserved, it would not warrant relief. To have standing to challenge the search, Herndon had to have an expectation of privacy in the storage unit. *State v. Gonzalez*, 32 Kan. App. 2d 590, 593, 85 P.3d 711 (2004). Herndon claimed a possessory interest in a different storage unit but no possessory

15

interest in the one the police searched. See *State v. Grissom*, 251 Kan. 851, 911, 840 P.2d 1142 (1992); *State v. Jakeway*, 221 Kan. 142, 144-45, 558 P.2d 113 (1976); *State v. McCammon*, 45 Kan. App. 2d 482, 484-85, 250 P.3d 838, *rev. denied* 292 Kan. 968 (2011). Herndon had no standing to challenge the search.

*K.S.A. 60-455 Evidence*

Herndon argues the prosecutor engaged in misconduct when, during opening statement, he referred to statues reported stolen by Waller which were found in the storage locker. Herndon complains that this was improper K.S.A. 60-455 evidence which was not disclosed to defense counsel as required by K.S.A. 2015 Supp. 60-455(e) and for which the State did not seek a pretrial court admissibility ruling.

The prosecutor's remark during opening statement was not testimony or evidence. But during the State's case, there was testimony introduced that the police found the statues in storage unit 5. Waller testified that two of the statues were stolen from his yard after he kicked Herndon out of the house. This testimony was not wholly unrelated to the charges against Herndon. The testimony tended to link the gun found in the storage unit to Herndon because items purportedly taken from Waller, with whom Herndon had lived, were also found in the storage unit.

In any event, Herndon did not object to any of this testimony at trial. Thus, Herndon's complaint about the prosecutor's misconduct during his opening statement was rendered harmless in view of the fact that the evidence referred to in opening statement was admitted for consideration by the jury without objection. The prosecutor's remark was neither gross nor flagrant and did not evidence ill will towards Herndon. We are satisfied that even if the prosecutor had not mentioned these items in opening statement, in view of this testimony admitted at trial without objection and the additional

16

overwhelming evidence of Herndon's guilt educed at trial, the outcome of the trial would have been the same. See *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014).

*Cumulative Error*

Herndon contends that the cumulative effect of multiple trial errors denied him a fair trial. We have already ruled on the propriety of Herndon's aggravated endangerment conviction. There were no other trial errors to accumulate. Thus, the notion of cumulative error simply does not apply.

*Sentencing*

Finally, Herndon contends the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to increase his sentence without requiring the prior convictions to be included in the complaint and proved to a jury beyond a reasonable doubt. The Kansas Supreme Court has repeatedly rejected this contention since its holding in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). We are duty bound to follow the holding in *Ivory* absent some indication the court is departing from this ruling. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015). We see no such indication. See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015). Accordingly, this claim fails.

Affirmed in part, reversed in part, and remanded.