NOT DESIGNATED FOR PUBLICATION

No. 117,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES LEROY MADLOCK JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed June 15, 2018. Affirmed in part and reversed in part.

*Christina M. Kerls*, Kansas Appellate Defender Office, for appellant.

*Megan Williams*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and GARDNER, JJ.

PER CURIAM: James Malloy Madlock Jr., was convicted of attempted voluntary manslaughter, aggravated burglary, aggravated assault, criminal possession of a firearm by a convicted felon, and two counts of aggravated endangering of a child. The district court sentenced Madlock to a controlling sentence of 101 months' imprisonment, including six months for each count of aggravated endangering of a child to run consecutive to the sentences on the other counts. Madlock timely appeals, raising three issues. We agree that insufficient evidence supports his conviction on one count of aggravated endangering of a child, but we affirm the district court on all other issues.

1

*Factual and procedural background*

The evidence relevant to the two counts of endangering a child, stated in the light most favorable to the State, follows. In November 2015, Angela Salazar was at her home with her son, J.T., age six; and her daughter, A.P., age 13. Her son Lorenzo, age 21, and his friend, the victim here, dropped off some cigarettes for Salazar and then went outside. J.T. was eating at the dining room table and A.P. was in her bedroom upstairs when Salazar heard loud voices outside.

Salazar looked outside and saw a man she recognized, later identified as Madlock. She saw a "30-round" clip of ammunition sticking out of the pocket of Madlock's sweatshirt. When she opened the front door, she saw the victim with his hands up, saying "I don't got no problem with you." She and Lorenzo both told Madlock to get away from her porch. The victim ran past Salazar, into the house. Madlock pushed Salazar out of the way and rushed in after the victim, pointing his gun either straight ahead or at Salazar's head.

Salazar gave differing accounts about what happened next—her trial testimony contradicts the statements she made during a recorded interview at the police station. In that recording admitted into evidence at trial, Salazar stated that she saw J.T. on the sectional couch in the living room, at the "very end," farthest away from Madlock. She told the law enforcement officer that she stopped moving so that J.T. would not move, and that after the shooting she found J.T. on the couch.

At trial, Salazar testified that after Madlock entered her home, she rushed into the dining room to find J.T., but he was no longer at the table and she did not see him anywhere. When Lorenzo came in, she told him to find J.T. She testified that the apartment is "not that big in there, so for me not to see my son [J.T.], I freaked out." She thought he might be hiding in the kitchen closet. She then saw Madlock and the victim in

2

the living room. She saw the victim on the floor in the "itty-bitty small space" between the bench seat at the dining room table and the sectional couch in the living room. Madlock leaned down and shot the victim in the head.

Salazar heard multiple shots and saw Madlock waving the gun. She thought he was just going to "shoot anything." She "freaked out" and wanted to run out of the house, but also wanted to find J.T. She told Lorenzo to find J.T. and then she and Lorenzo ran out of the house. By this time, A.P. was running downstairs, and Salazar told her to get out of the house and then pushed her outside. She heard the gunshots stop and did not know where Madlock was or what he was doing. When she saw him, she thought maybe his gun had jammed. He "flew out" of the door right past her. He had the gun but did not brandish it at her again. Salazar testified that the only time Madlock was in proximity to A.P. was when he ran past her and Salazar, and that A.P. saw Madlock. After Madlock left, Lorenzo came out of the house, and then the three went back in to find J.T. They found him in a space behind the sectional couch. Salazar testified that they "never even knew that" he was there.

Madlock was convicted in a jury trial of the charges noted above. Although he was charged with attempted second degree murder, the jury found him guilty of the lesser included offense of attempted voluntary manslaughter. Madlock appeals, raising three issues.

*Does sufficient evidence support Madlock's conviction of aggravated endangering of a child?*

Madlock first argues that insufficient evidence supports his conviction of aggravated endangering of a child because the State failed to prove that he knew that J.T., A.P, or any child was in Salazar's house when he was there.

*Standard of review*

The standard of review for challenges to the sufficiency of the evidence is "whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Davis*, 275 Kan. 107, 118, 61 P.3d 701 (2003). In reviewing the evidence in the light most favorable to the prosecution, appellate courts "examine all the evidence favorable to the prosecution against 'the essential elements of a charge' to see if sufficient evidence supported all necessary elements. [Citation omitted.]" *State v. Bolze-Sann*, 302 Kan. 198, 203, 352 P.3d 511 (2015).

*Discussion*

Aggravated endangering of a child is defined as "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." K.S.A. 2017 Supp. 21-5601(b)(1). A person acts "recklessly" when he or she "consciously disregards a substantial and unjustifiable risk that circumstances exist . . . and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2017 Supp. 21-5202(j).

We examined the recklessness element of this crime in *State v. Herndon*, 52 Kan. App. 2d 857, 861-62, 379 P.3d 403 (2016), *rev. denied* 306 Kan. 1324 (2017). We found the State must prove "that the defendant acted with the conscious realization that there was a substantial risk that such conduct would place a child in peril." 52 Kan. App. 2d 857, Syl. ¶ 7. Because no evidence showed the defendant was aware of the likely presence of a child in the backseat of a pickup truck when he shot at the truck, we reversed his conviction for aggravated endangering of a child.

Here, two children were present in the home at the time of the shooting but were in different locations. Thus, we consider the evidence regarding each child separately.

*The evidence regarding endangerment of J.T. (Count VI)*

The evidence supporting this conviction, viewed in the light most favorable to the State, follows:

(1) Before Madlock entered the room, J.T., a 6 year-old-boy, was sitting at the dining room table;

(2) When Madlock entered the room, Salazar yelled at him to not shoot her son but she did not think Madlock heard her;

(3) J.T. was on the far end of the sectional couch when the shooting occurred;

(4) Salazar stood still after she saw J.T., hoping that J.T. would also stay still and Madlock would not notice him; and

(5) Madlock shot the victim while the victim was on the floor in the small space between the dining room table and the same sectional couch that J.T. was on.

As noted above, Salazar's statements concerning J.T.'s whereabouts during the event were contradictory—at the police station, she stated that he was "on the couch," whereas at trial, she testified that he was "behind the couch" and they "never even knew he was there." But the recording of this police interview was admitted into evidence and it is not our role to resolve evidentiary conflicts.

Madlock argues that to consciously disregard a risk of endangering a child, the State must prove defendant's actual knowledge of the child's presence, citing *Herndon*, 52 Kan. App. 2d at 862. Here, no direct evidence shows that Madlock knew of the boy's presence. But the jury could have chosen to believe testimony that J.T. was on the far end

5

of the sectional couch at the time Madlock shot the victim in close proximity to that couch. Those facts give rise to the reasonable inference that Madlock was aware a child was present, and warrant a jury's finding beyond a reasonable doubt that Madlock had a conscious realization of the presence of a child and then disregarded a substantial risk that his conduct would place J.T. in peril. Accordingly, we affirm Madlock's conviction of aggravated endangering of a child in count VI.

*The evidence regarding endangerment of A.P. (Count V)*

Viewed in the light most favorable to the State, the evidence supporting this conviction consists of the following:

(1) A.P., a 13 year old girl, was upstairs when Madlock entered the apartment;

(2) She ran downstairs after Madlock began shooting;

(3) Salazar pushed her out of the house;

(4) Madlock ran past her and Salazar as he left the apartment; and

(5) She saw Madlock as he ran past her.

A.P. was upstairs when the shooting began and no facts show that the shooting continued after she ran downstairs. When she ran downstairs, her mother pushed her outside and she saw Madlock run past her with a gun as he left the apartment. No testimony shows any interaction between Madlock and A.P. or shows that Madlock posed a threat to her either when he was in the apartment or when he ran out of it. This evidence is insufficient to prove that Madlock consciously realized that A.P. was present during the shooting. Nor does the evidence show that Madlock acted with the conscious realization that his fleeing the apartment with a gun posed a substantial risk that such

6

conduct would place A.P. in peril. Because the State failed to prove the elements of this crime as to A.P., we must reverse his conviction on count V.

*Did the district court err in denying Madlock's motion for transcripts and a continuance?*

Madlock next contends the district court violated his constitutional and statutory rights by denying his attorney's motion for a transcript and for a continuance, made the day before his sentencing hearing. We first set forth a few facts relevant to this claim.

Madlock was convicted by a jury on August 2, 2016. On August 24, 2016, Madlock wrote a letter to the district court asking for a new trial and a new attorney, generally alleging that his trial attorney was "no help to me." The district court permitted Madlock's trial counsel to withdraw and appointed a new attorney but denied Madlock's request for a transcript which Madlock wanted so his new attorney could become familiar with the case.

At a September hearing concerning post-trial motions, the district court granted new counsel's request for a two-week continuance. Two weeks later, the district court granted counsel's request for a competency evaluation. In October, the district court found Madlock competent and set his sentencing for December 7. On December 6, 2016, new counsel filed the two motions that underlie this appeal: a motion for transcripts and a motion for a continuance so he could review the transcripts and consult further with Madlock concerning any trial errors. The district court denied those motions and sentenced Madlock.

*No constitutional right to transcripts has been shown*

Madlock argues that without the trial transcripts—and time to review them for specific acts or omissions that could be alleged to be deficient—his new counsel could

7

not effectively represent him in pursuing a motion for a new trial based on ineffective assistance of his trial counsel. Thus, he argues, the district court denied him his constitutional right to the effective assistance of counsel in the sentencing stage.

A defendant's Sixth Amendment right to counsel extends through sentencing because sentencing is a critical stage in a felony proceeding. See *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). But Madlock does not contend that his new attorney did not represent him adequately *during* his sentencing hearing. Instead, he contends that his new counsel could not effectively represent him presentencing in pursuing an untimely motion for a new trial based on ineffective assistance of his trial counsel.

The constitutional right to counsel applies to a motion for new trial filed within the statutory limitation period, but does not apply to one not filed within that time. *State v. Andrews*, 228 Kan. 368, 375, 614 P.2d 447 (1980). See *State v. Sharkey*, 299 Kan. 87, 95, 322 P.3d 325 (2014); *State v. Kirby*, 272 Kan. 1170, 1192-93, 39 P.3d 1 (2002); *State v. Kingsley*, 252 Kan. 761, 766-67, 851 P.2d 370 (1993). A motion for new trial filed within the 14-day limitation period and before a direct appeal is a critical stage of the criminal proceedings, so a defendant has a Sixth Amendment right to the representation of counsel at a hearing on the motion. *Sharkey*, 299 Kan. at 96. But as explained in *Sharkey*, an untimely motion for new trial is not a critical stage of a felony proceeding for constitutional purposes.

Madlock concedes that he did not timely file a motion for new trial within 14 days of his guilty verdict, but Madlock contends that the district court extended the motion deadline on September 14, 2016, by granting a two-week extension for his new attorney to get up to speed. The relevant statute states that a motion for new trial not based on newly discovered evidence "shall be made within 14 days after the verdict . . . or within such further time as the court may fix during the 14-day period." K.S.A. 2017 Supp. 22-

8

3501. Madlock was found guilty on August 2, 2016, thus any extension the district court granted on September 14 was not fixed during the 14-day period after the verdict, as the statute requires. And no motion for new trial was filed within the two-week extension Madlock specifies.

In *Andrews*, our Supreme Court found that "an indigent defendant has a right to appointed counsel in perfecting his appeal, *including the right to a trial transcript* and the right to file an appeal without a filing fee. [Citation omitted.]" (Emphasis added.) 228 Kan. at 372. The right to a free transcript is tied to a defendant's right to appointed counsel. In *State v. Deal*, 41 Kan. App. 2d 866, 888, 206 P.3d 529 (2009), the defendant sought to expand *Andrews*, arguing that the right to transcripts should apply not only to appeals but also to motions for a new trial in the district court. We refused to extend the *Andrews* holding to include a constitutional right to trial transcripts for all attorneys appointed after the trial to handle posttrial motions for indigent defendants. *Deal* found that the trial court did not abuse its discretion or interfere with defendant's right to counsel by denying his request for a continuance of the hearing on motions for a new trial so that new counsel could obtain and review a trial transcript. The same is true here.

Madlock, who filed no motion for a new trial, can show no violation of his Sixth Amendment rights. Madlock had counsel during trial and through sentencing, and has not shown any constitutional right to a transcript so his counsel could have filed an untimely motion for a new trial before his sentencing hearing.

*No statutory right to a transcript has been shown*

Madlock primarily contends that he was entitled to a transcript under K.S.A. 22-4509, which provides:

9

"Whenever it is determined that a transcript of all or some part of the trial or other proceeding is necessary to enable a person who is entitled to appeal, or to pursue another post-conviction remedy, to present such person's cause adequately and it is further determined that the appellant or petitioner or movant is financially unable to pay for the preparation of such transcript, the district court shall order that the transcript be supplied to the appellant or petitioner or movant by the official reporter of the district court."

This court analyzes whether a defendant is entitled to free transcripts using an abuse of discretion standard. *State v. Brown*, 266 Kan. 563, 572, 973 P.2d 773 (1999). Judicial discretion is abused if it is based on an error of fact or of law or it is arbitrary, such that no reasonable person would adopt the view of the court. *State v. Johnson*, 304 Kan. 924, 945, 376 P.3d 70 (2016). The party asserting abuse of judicial discretion has the burden to prove it on appeal. *State v. Smith-Parker*, 301 Kan. 132, 161, 340 P.3d 485 (2014). To the extent this issue requires statutory interpretation, our review is unlimited. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Madlock must overcome three barriers to rely on this statute. First, he must show he is financially unable to pay for the preparation of a transcript. We presume Madlock meets this criteria because he was appointed counsel.

Second, Madlock must show that he seeks the transcripts either to enable an initial appeal or to allow pursuit of a "postconviction remedy." Madlock contends that the transcript would have enabled him to pursue a postconviction remedy—an untimely motion for new trial. Madlock asserts a right to receive transcripts after being convicted but before being sentenced so he could determine whether to pursue a motion for new trial. But this statute may not extend that far.

Madlock cites no authority for his assertion that a motion for new trial is a "postconviction remedy" within the meaning of that term in K.S.A. 22-4509. Petitions

10

under K.S.A. 60-1501 and motions under 60-1507 easily fit that bill. But none of the cases citing K.S.A. 22-4509 involve a motion for new trial. See, e.g., *State v. Griffen*, 241 Kan. 68, 70, 734 P.2d 1089 (1987); *State v. Duckett*, 13 Kan. App. 2d 122, 124-25, 764 P.2d 134 (1988). We routinely refer to a motion for a new trial as a "posttrial motion," not as a postconviction remedy or a postconviction motion. See, e.g., *State v. Dupree*, 304 Kan. 377, 382, 373 P.3d 811 (2016) ("After denying Dupree's *posttrial motions* for a new trial and judgment of acquittal, the district court sentenced him."). (Emphasis added.) The legislature does the same:  the statute governing motions for new trial is in Article 35, which is titled "Post-trial Motions." K.S.A. 2017 Supp. 22-3501.

Nonetheless, the Kansas Supreme Court has found that when an untimely motion for new trial is filed, the trial court should treat it as a collateral challenge to the conviction under K.S.A. 60-1507. *Sharkey*, 299 Kan. at 95. A K.S.A. 60-1507 motion is a postconviction remedy. In that situation, the duty to appoint counsel depends on whether the motion raises substantial questions of law or triable issues of fact. See K.S.A. 22-4506(b); *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009). The duty to provide a transcript depends on that same criteria. See K.S.A. 22-4506(b) (providing that if the petition or motion presents substantial questions of law or triable issues of fact and raises questions shown by the trial record, the court shall order that the petitioner or movant be supplied with a transcript of the trial proceedings). Although Madlock filed neither a timely nor an untimely motion for new trial, we assume without deciding that had he filed an untimely motion for new trial, he may have fit within the "postconviction remedy" prong of K.S.A. 22-4509.

Third, to be entitled to a transcript under K.S.A. 22-4509, Madlock must also show that the transcripts are "necessary" to enable him to present his cause adequately. This requirement echoes the requirement in K.S.A. 22-4506(b) that a postconviction motion must present substantial questions of law or triable issues of fact or it will be subject to summary dismissal.

11

Vague, conclusory requests for a transcript that fail to show why a transcript is necessary are mere fishing expeditions that fail to meet the necessity standard:

> "In his motion to the Supreme Court for the transcript, defendant's appellate counsel stated the transcript 'is necessary for adequate preservation of the right to appeal a sentencing determination.' There is absolutely no showing of any attempt by appellate counsel to determine what actually transpired at the hearing and no showing of why counsel feels the transcript is necessary. . . . On this record, the request for a transcript appears to be nothing more than a fishing expedition by counsel and we find no error in the denial of the transcript." *Griffen*, 241 Kan. at 71.

Madlock did not make a showing of necessity at the district court and does not do so now. Madlock asserts that the transcripts were necessary to enable him to file an untimely motion for new trial before he was sentenced, based on some unspecified grounds generally relating to ineffective assistance of counsel. The closest he comes to showing any value of the transcripts is to argue that he was prejudiced by not having them earlier so he could raise his claims of ineffective assistance of counsel to the district court instead of raising them later. But Madlock has never shown why he needed the transcripts before he could be sentenced—nothing shows that any deficiency in his trial counsel, had it been revealed in the transcripts, could have had any impact on his sentencing hearing.

Nor does Madlock cite caselaw to support his assertion of a right to the trial transcripts. We rejected a similar argument in *Deal*, whose facts parallel those here. The defendant in *Deal* argued that "'counsel could no more mount an effective argument at the hearing on the motion for new trial without the trial transcript than an appointed appellate attorney could mount an appeal without said transcripts.'" 41 Kan. App. 2d at 888. Likewise, Madlock's counsel stated that he could not raise the issue of ineffective assistance of counsel without a trial transcript and could not do it effectively without a "substantially larger amount of time." We rejected this argument in *Deal* as illogical,

12

unsupported by authority, and impractical, as it would empower a defendant to indefinitely extend posttrial litigation before the trial court. Madlock gives us no reason to reconsider that position. We find no abuse of discretion in the district court's determination that Madlock failed to show the necessity of transcripts before his sentencing, so he was not entitled to a transcript under K.S.A. 22-4509.

*We find no abuse of discretion in the denial of a continuance*

As we recognized in *Deal*, in certain cases, the trial court might properly continue the matter for the defendant's attorney to obtain a trial transcript. 41 Kan. App. 2d 890. The district court may grant a continuance for good cause shown. K.S.A. 22-3401. We review the denial of a motion to continue the sentencing hearing under an abuse of discretion standard. *State v. Beaman*, 295 Kan. 853, 863, 286 P.3d 876 (2012).

Madlock asserts that we should review this issue de novo, citing *Johnson.* But that case provides for de novo review when a defendant alleges that the denial of a continuance interfered with his or her ability to present a *defense at trial*. 304 Kan. at 945. That is not the case here, and Madlock cites no authority for applying *Johnson*'s analysis to postconviction proceedings. Accordingly, we review this issue for an abuse of discretion.

Madlock has failed to identify any error of law or fact in the district court's ruling. We thus review it to see if it was arbitrary. The district court had already continued the sentencing hearing for several months in response to defense motions and it saw no legitimate reason for further delay. Madlock's new attorney was appointed on September 1, 2016, and Madlock was found competent on October 19, 2016. Nonetheless, his attorney did not file a motion for a continuance and transcripts until December 6, 2016, the day before the date of his sentencing hearing. No explanation for that delay was given. Nor was any reason given why counsel needed the transcripts before Madlock was

13

sentenced. The court accurately noted that Madlock had alternative avenues of relief—he could raise the issue of trial counsel's ineffectiveness, if any, in an appeal or in a K.S.A. 60-1507 motion. The court also found it beneficial to Madlock not to delay his sentencing for "months and months" to permit his attorney to review the trial transcript, because some issues may relate to effective assistance of counsel but not to mere trial error and could not be remedied by a motion for new trial. It thus found denial of the continuance would not prejudice Madlock.

Madlock is represented on appeal by counsel and has received the transcripts he desired earlier yet he has not made any viable or specific allegations that his trial counsel was defective or that those deficiencies prejudiced him, as is necessary for any claim of ineffective assistance of counsel. See *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The only prejudice Madlock asserts on appeal are (1) a significant amount of time will pass before he can get his claims of ineffective trial counsel addressed in a K.S.A. 60-1507 motion, and (2) that he will have no right to counsel in preparing his K.S.A. 60-1507 motion. These facts are common to all defendants who file K.S.A. 60-1507 motions, but they fail to show prejudice flowing from any deficiency of Madlock's trial counsel, or prejudice caused by the district court's denial of a continuance.

"[S]imply arguing that there 'may' be an issue worthy of another motion is insufficient to justify a continuance." *Beaman*, 295 Kan. at 864 (finding no abuse of discretion in denying a sentencing hearing continuance when defense counsel could have addressed the issues earlier, and counsel was merely speculating whether motions may need to be filed).

Under these circumstances, we find no abuse of discretion by the district court in denying the continuance. But even assuming some abuse of discretion, we find any error to be harmless given Madlock's failure to show prejudice.

14

*Did the district court violate the defendant's Sixth or Fourteenth Amendment rights by using his criminal history to increase his sentence?*

Madlock's last argument is that the district court improperly used his criminal history to increase his sentence. He argues that the district court violated his constitutional rights as explained in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his criminal history to increase his sentence without having proved his criminal history to a jury beyond a reasonable doubt. But our Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002), and it continues to cite *Ivory* as valid law. See, e.g., *State v. Shaylor*, 306 Kan. 1049, 1050, 400 P.3d 177 (2017). We are bound to follow the holdings of our Supreme Court absent an indication that our Supreme Court is moving away from its earlier position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Thus, we reject this argument.

*Conclusion*

For the reasons stated above, we reverse Madlock's convictions on count V for aggravated endangering of a child and we affirm all remaining issues.