NOT DESIGNATED FOR PUBLICATION

No. 117,683

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAMECA R. DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed July 6, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

PER CURIAM:  Shameca Davis appeals her conviction for possession of cocaine. She did not testify at trial, but she introduced the testimony of Virgil Parish, the father of her children. According to Parish, Davis picked him up at work on the day of this incident. Three of their children were in the back seat of the car. When Parish got into the driver's seat of the car he was carrying a bag of donuts, which he placed on the center console when he put on his seat belt. (The police later found that the donut bag contained not only donuts but also crack cocaine.) Davis got into the passenger seat when Parish took over driving the car, and she fell asleep until the car was stopped by the police. While the police talked to Parish she put the donut bag on her lap and reached into the

1

bag a couple of times. The police found drugs on Parish and marijuana and drug paraphernalia on the driver's side of the car. Parish was charged with several drug crimes, but Davis was also charged with possessing the drugs in the donut bag. She proclaimed her innocence, claiming she had been left holding the bag.

The State's evidence at trial was that the police stopped Parish's vehicle when he failed to stop at a stop sign. Officer Dustin Noll spoke with Parish while Officer Lee Froese spoke with Davis. Davis remained in the car while Officer Noll ran a records check on Parish. In the meantime, Officer Froese noticed the bag of donuts which Davis put on her lap. He saw Davis reach into the bag twice to retrieve a donut. The bag was small:  only about six inches wide and four inches deep.

The record check on Parish came back and disclosed that he had an outstanding warrant and was driving on a suspended license. Officer Noll asked Parish to get out of the car and then patted him down and found two baggies of cocaine and over $5,000 in cash. A search of the driver's side of the vehicle turned up a bag of marijuana hidden inside a can of baby formula along with a set of scales.

Officer Froese asked Davis to get out of the car so he could finish the search of the car. He began by checking the bag of donuts that Davis had been holding. When he looked into the bag he found the crack cocaine. Davis was charged with possession of cocaine.

Parish was also charged in this incident. He was charged with possession of cocaine, marijuana, and drug paraphernalia. He entered into a plea agreement and pled guilty to the charges.

At Davis' trial, Officer Noll testified that he discovered cocaine on Parish's person and marijuana and a digital scale on the driver's side of Parish's car. Officer Froese

2

testified that he observed the bag of donuts on Davis' lap and that he witnessed Davis reach into the bag to retrieve a donut for herself and hand a donut to at least one of the children in the back seat. Then, after Officer Noll placed Parish under arrest, Davis moved the bag of donuts from her lap onto the center console of the vehicle. Davis became nervous when she got out of the car at Officer Froese's request. Her eyes widened and her hands began to shake. Officer Froese began his search of the car with the bag of donuts in which he found a bag of crack cocaine. The bag was already open so all he had to do was tilt the bag toward him to see the cocaine inside. He explained that "[the cocaine] was right on top of the chocolate donuts, right, I think, almost in the center of the chocolate donuts and . . . it was almost the size of a donut." The drugs in the donut bag consisted of 4.19 grams of crack cocaine.

Parish testified for the defense. He asserted that Davis did not know the drugs were present in the car. The jury apparently disbelieved Parish and found Davis guilty of unlawful possession of cocaine. The court sentenced her to a controlling 13 months in prison and placed her on probation. Davis appeals.

*Sufficiency of the Evidence*

Due process requires that the State prove every element of the charged crime. *In re Winship*, 397 U.S. 358, 361-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017). The elements the State had to prove were set forth in the following jury instruction:

> "The defendant is charged with unlawfully possessing cocaine. The defendant pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. The defendant possessed cocaine; and
> "2. This act occurred on the 13th day of February, 2015 in Sedgwick County, Kansas.

3

"'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

Thus, in order for Davis to be convicted of possession of crack cocaine, she must have had control over the substance with knowledge and intent to have such control. See *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976).

In considering the sufficiency of the evidence, we view the evidence in the light favoring the State. *Banks*, 306 Kan. at 858. We will uphold a conviction if we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on the evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In this case it is important to note that in our review of the evidence we do not substitute our view on the credibility of the witnesses—a matter which we leave to the jury. See *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Davis argues that her conviction is the result of an impermissible stacking of inferences and that these inferences, one upon the other, are the only evidence supporting this conviction.

The basic principles at play with respect to this issue are found in the following syllabi taken from *State v. Herndon*, 52 Kan. App. 2d 857, Syl. ¶¶ 4-6, 379 P.3d 403 (2016), *rev. denied* 306 Kan. 1324 (2017):

"In considering whether the facts elicited at trial support the verdict, the appellate court may consider the reasonable inferences arising from the facts established at trial, but it may not stack inference upon inference to arrive at a fact needed to support the verdict."

4

"Facts can be established at trial either by direct evidence or by circumstantial evidence. Neither is intrinsically more worthy of consideration than the other. In fact, even the most serious crime may be proven by circumstantial evidence."

"A conviction cannot be based solely upon inferences. Thus, when a fact is established by circumstantial evidence, the circumstances must be proven and cannot be inferred from other circumstances. But once a fact is proven through circumstantial evidence, the jury may draw reasonable inferences from a fact so proven. Thus, there is no impermissible stacking of inferences if each element of the crime charged is supported by substantial evidence, either direct or circumstantial."

See *State v. Taylor*, 34 Kan. App. 2d 889, 126 P.3d 437 (2006), where these principles were applied in a case involving the possession of drug paraphernalia. More recently, in *State v. White*, No. 109,953, 2014 WL 5312873, at *6 (Kan. App. 2014) (unpublished opinion), our court stated:

"When, as here, drugs are found in a car containing more than one person, the defendant's mere presence in the vehicle is not enough to prove knowledge and support a conviction. [Citation omitted.]
"Even so, the State can prove knowledge and intent to control by circumstantial evidence, so long as the circumstantial evidence in question is proved and is not inferred or presumed from other circumstances. See *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009); [citations omitted]."

Here, the vehicle which Davis was driving before picking up Parish was found to contain a bag of marijuana hidden inside a can of baby formula along with a set of scales. Officer Froese testified that Davis kept the bag of donuts containing the crack cocaine on her lap during the entirety of time it took Officer Noll to run a background check on Parish. He testified that Davis reached into the bag of donuts more than once, that the bag was relatively small, that the cocaine was about the size of one of the donuts in the bag, and that the cocaine was "right on top of the chocolate donuts, I think, almost in the

center of the chocolate donuts." Finally, Davis was quite nervous when she was asked to get out of the car.

In *State v. Terrazas*, No. 93,110, 2006 WL 619184, at *3 (Kan. App. 2006) (unpublished opinion), the defendant claimed that the jury inferred that he possessed marijuana from only the circumstantial evidence of his proximity to the marijuana at issue. But our court determined that there was no stacking of inferences and held that "proximity to the marijuana was a circumstance adequately proven by the State, and the jury was free to make more than one inference from that fact, so long as the inferences were not based upon each other." 2006 WL 619184, at *3.

Here, the circumstantial evidence was sufficient to establish that Davis had joint or exclusive control of the donut bag and the crack cocaine it contained. A reasonable juror could have inferred from this evidence that Davis knew that the bag contained cocaine and also that Davis knowingly possessed cocaine with an intent to do so. The inferences could have reasonably been drawn from the evidence without being drawn from each other. The jury heard Davis' evidence about how she was left holding the bag and, unfortunately for Davis, rejected it. Viewing the evidence in light favoring the State, there was sufficient evidence to support Davis' conviction.

*Prosecutorial Error*

Davis argues that the prosecutor erred during his opening statements by mischaracterizing anticipated testimony and again during closing arguments by arguing outside of the evidence and by providing his own personal opinion on Davis' guilt.

The process for our analysis is directed by *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). First, we must consider

6

"whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice . . . [this court applies] the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Sherman*, 305 Kan. at 109.

*Opening Statement*

Davis argues that the prosecutor improperly stated that Officer Froese would testify that he saw Davis "pick up that bag of donuts, open it up, reach her hand in *for a while*." She contends that this conflicts with the officer's testimony that he saw Davis reach into the bag and retrieve a donut. She contends there was no evidence that her hand lingered in the bag longer than necessary to remove a donut.

An opening statement is not evidence. Its purpose is to assist the jury in understanding what each side expects its evidence will be and to preview for the jury the questions and issues it will have to resolve at the end of the case. See *State v. Love*, 305 Kan. 716, 728, 387 P.3d 820 (2017); *State v. Alger*, 282 Kan. 297, 305, 145 P.3d 12 (2006).

Here, the officer's testimony was presented live and not by the reading of a deposition or other sworn statement. The prosecutor cannot be expected to know the exact words the witness will use in characterizing Davis' actions. In a situation such as this, litigators are not held in opening statement to the exact words the witness will use in

testifying in open court. The record makes clear that Davis reached her hand into the donut bag on more than one occasion. While Officer Froese did not testify about the duration that Davis kept her hand in the bag, he testified that she did at least have her hand inside the donut bag. The prosecutor's statement was not outside the latitude we give litigants in opening statements. Moreover, the prosecutor's use of the phrase "for a while" did not prejudice Davis by denying her a fair trial.

*Closing Arguments*

Davis points to the prosecutor's statement in closing that "[t]he defendant was the only person to access the donut bag on February 13th, 2015." She contends that with this statement the prosecutor argued outside the record. By "accessing" the donut bag, an ordinary juror would take this to mean that the evidence was that the defendant was the only person who put a hand into the donut bag that day.

February 13, 2015, was the date of the traffic stop. There was no evidence that anyone other than Davis "accessed" the donut bag that day. Parish testified that when he got into the car he was carrying the donut bag. In fact, he claimed there were two bags. In any event, Parish did not testify that he had put his hand into the donut bag at any time that day. Nor did he testify that he bought the donuts that day rather than on some earlier date. Officer Froese testified that Parish did not touch the bag during the course of the traffic stop. But, as noted earlier, there was ample evidence that Davis put her hand into the bag more than once before the police found the drugs. The prosecutor was correct in arguing that, based on the evidence educed at trial, Davis was the only person to "access" the donut bag on the day of the traffic stop.

Finally, Davis argues that the prosecutor impermissibly expressed his personal opinion during closing argument by urging the jury to find that Davis knowingly

8

possessed cocaine because she reached into the donut bag. During closing argument, the prosecutor stated:

> "Could the defendant have reached into that bag, could the defendant have been in and out of that bag, not once, but twice, and not have knowledge that that baggie that is the size of one of the donuts, right on top, right in the middle, was in that bag? The State would submit she could not have.
>
> ". . . [T]he defendant knowingly could not have—could not have been in and out of that bag twice without knowing that cocaine was there."

"'[A] prosecutor has "'freedom . . . to craft an argument that includes reasonable inferences based on the evidence'" and "'when a case turns on which version of two conflicting stories is true, [to argue] certain testimony is not believable. . . .""' A prosecutor may also argue that the evidence demonstrates a defendant's guilt. [Citations omitted.]" *State v. Charles*, 304 Kan. 158, 174, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017), *cert. denied* 585 U.S. ___ (June 25, 2018).

Here, the prosecutor's statement was in the context of a lengthy explanation of the evidence and was within the prosecutor's wide latitude to argue the reasonable inferences to be drawn from the evidence. It was not the expression of the prosecutor's personal opinion on the issue of Davis' guilt.

The prosecutor did not err in his remarks during opening statement and in closing argument.

Affirmed.

9