(126 P.3d 437)

No. 91,994

STATE OF KANSAS, *Appellee*, v. RONNIE L. TAYLOR, *Appellant*.

Opinion filed January 20, 2006.

*James T. Mamalis*, of Wichita, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and MARQUARDT, JJ.

MCANANY, J.: Ronnie L. Taylor appeals his convictions for possession of anhydrous ammonia in an unapproved container and possession of drug paraphernalia, both with the intent to manufacture a controlled substance. He challenges the sufficiency of the evidence against him, claiming the jury engaged in impermissible stacking of inferences in several respects. Since there is substantial competent evidence to support his convictions, this argument fails and we affirm his convictions.

Taylor, who was on parole, had failed to report to his parole officer and was the subject of an outstanding arrest warrant. Parole Officer Ed Mora, who was driving around Hutchinson and who knew Taylor, saw Taylor driving an automobile. Mora followed Taylor and radioed the dispatcher that he was in pursuit. He activated the lights and siren on his police car, but Taylor refused to stop. The ensuing car chase lasted for approximately 25 minutes. It ended when Taylor and his passenger jumped out of the moving vehicle and it struck a light pole. They each then took off on foot.

Mora radioed the dispatcher and requested a K-9 unit. Officer Richard Elliott arrived with Cyrus, a dog from the Hutchinson Correctional Facility's K-9 unit who was trained in tracking. Cyrus picked up the scent at the driver's seat of the abandoned car and led the police along a trail of footprints in the snow that ultimately led to the home of Taylor's mother.

Meanwhile, Officer Dean Harcrow, who was assigned to the drug enforcement unit of the Hutchinson police department, arrived at the scene of the wrecked and abandoned car. He found a tank in the trunk of the car that was of the type used to store anhydrous ammonia, a chemical used in the production of methamphetamine. The contents of the tank had the distinctive odor of anhydrous ammonia. Officer Harcrow, who smelled the odor, testified at trial that he was one-hundred percent sure that it was anhydrous ammonia. Officer Lee Campbell also searched the car and found various items of drug paraphernalia as well as a container of methamphetamine and a bag of marijuana.

After searching the car, Harcrow searched the garage apartment at the back of Taylor's mother's home, where he found materials consistent with the manufacture of methamphetamine.

Taylor was charged with (1) possession of methamphetamine, (2) possession of marijuana, (3) possession of drug paraphernalia with the intent to manufacture a controlled substance, and (4) possession of anhydrous ammonia with the intent to manufacture a controlled substance. Following a trial by jury, Taylor was convicted of the latter two charges, the possession of drug paraphernalia and anhydrous ammonia charges.

Taylor argues that there was insufficient evidence to convict him since the evidence against him consisted of a stacking of inference upon inference. Our task is to review the record and determine whether, when viewed in the light most favorable to the prosecution, a rational factfinder could have found Taylor guilty beyond a reasonable doubt. See *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005). Taylor argues that the jury improperly "stacked" inferences in order to establish five separate facts and thereby convict him.

Facts can be established at trial either by direct evidence or by circumstantial evidence. Neither is intrinsically more worthy of consideration than the other. In fact, even the most serious crime may be proven by circumstantial evidence. *State v. Scott*, 271 Kan. 103, 107, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001); *State v. Cruz*, 15 Kan. App. 2d 476, 488, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991). Nevertheless, a conviction cannot be based solely upon inferences. *Cruz*, 15 Kan. App. 2d at 490. Thus, when a fact is established by circumstantial evidence, the circumstances must be proven and cannot be inferred from other circumstances. *State v. Rice*, 261 Kan. 567, 587, 932 P.2d 981 (1997). But once a fact is proven through circumstantial evidence, the jury may draw reasonable inferences from a fact so proven. Thus, there is no impermissible stacking of inferences if each element of the crime charged is supported by substantial evidence, either direct or circumstantial. Finally, it is important to note that it is the jury's role to determine the credibility of the witnesses and weigh the evidence. *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). Consequently, if there is substantial competent evidence to support the jury's verdict, we do not substitute our factual analysis for that of the jury.

### Cyrus

First, Taylor claims that the jury had to infer that Cyrus actually followed the driver's scent from the wrecked and abandoned car to his mother's home because there was no evidence to support Cyrus' ability to track. Cyrus, a 6½- to 8-year-old bloodhound, had been trained by Elliott starting when Cyrus was an 8-week-old pup. Elliott testified about his training of Cyrus and the ability of Cyrus to track a scent. Taylor did not object to any of this testimony. Elliott then testified, without objection, to Cyrus' tracking efforts on the day in question. We do not reweigh any of this evidence. The jurors believed Elliott regarding Cyrus' ability to track, and there was substantial evidence upon which they could base that belief.

### Footprints

Taylor next argues that the jury improperly inferred that he made the footprints in the snow that Elliott testified he saw along the route Cyrus followed, since there was no testimony that linked the pattern of the footprints to shoes worn by Taylor. The footprints were not an essential link in a chain of evidence needed to convict Taylor. Whether the footprints were those of Taylor or not, there was still substantial evidence to support his convictions based upon the drug paraphernalia and anhydrous ammonia found in the abandoned car.

### Knowledge of The Presence of Drug Paraphernalia and Anhydrous Ammonia in the Car

Taylor argues that the jury improperly inferred that he knew the car contained anhydrous ammonia and drug paraphernalia. He correctly states that his mere presence with another person in a car where drugs were found is not enough to support a conviction for possession of drugs. See *State v. Bockert*, 257 Kan. 488, 493-94, 893 P.2d 832 (1995). However, *Bockert* notes that the presence of other factors can supply the link between a defendant and the drugs—or, in Taylor's case, the anhydrous ammonia tank and the drug paraphernalia—found in a car with the defendant. Those circumstances include any suspicious behavior by the defendant. In

Taylor's case, the jury had before it evidence that Taylor was driving the car; that he failed to stop when Mora activated his lights and siren; that he led Mora on a 25-minute chase; and that his final effort at flight consisted of jumping from a moving car and running from the scene. The large tank of anhydrous ammonia was found in the trunk of the car along with drug paraphernalia. Viewing the evidence in the light most favorable to the prosecution, the jury had ample evidence upon which it could have found that Taylor had knowledge of the anhydrous ammonia and drug paraphernalia in the car as he attempted to elude the police.

### Manufacture of Methamphetamine

Taylor claims that the jury improperly inferred that he was manufacturing methamphetamine in the garage apartment behind his mother's home notwithstanding his mother's testimony that he had not lived there and she had not seen him for several years. Since a partial methamphetamine lab was found in Taylor's mother's garage, the jury could have disregarded her testimony as lacking credibility. But even if the jury believed her, there still was substantial evidence to support its verdict when the evidence is viewed in the light that favors the prosecution. The jury did not have to find, by inference or otherwise, that Taylor was manufacturing methamphetamine in the garage apartment in order to convict him of possession of drug paraphernalia and anhydrous ammonia with the intent to manufacture a controlled substance.

Taylor's crimes did not require proof of manufacturing but rather proof of possession with the intent to manufacture. Intent may be shown by acts, circumstances, and reasonable inferences. *State v. Salcido-Corral,* 262 Kan. 392, 398, 940 P.2d 11 (1997). Ordinarily, it is presumed that a person intends all of the usual consequences of his or her voluntary acts. *State v. Acheson,* 3 Kan. App. 2d 705, 712-14, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979). Here, Harcrow testified about the limited use of anhydrous ammonia as a farm fertilizer. There was no evidence that Taylor was a farmer or engaged in farming. Harcrow also testified that Coleman fuel and a Coleman camping burner are used in the manufacture of methamphetamine. Coleman fuel and a Coleman

camping burner were found in Taylor's trunk, along with the anhydrous ammonia. The jury could reasonably have inferred from the fact that Taylor's trunk contained several items associated with the manufacture of methamphetamine and the fact that he ran from the police, that Taylor possessed the anhydrous ammonia and paraphernalia with the intent to manufacture methamphetamine.

### Testing of the Anhydrous Ammonia Tank

Finally, Taylor argues that the jury improperly inferred that the propane tank found in the car contained anhydrous ammonia. No evidence was presented at trial concerning the results of any tests of the contents of the tank. However, there was testimony that the tank was set up in a manner consistent with a tank used to contain anhydrous ammonia. The brass tank fitting had turned blue, consistent with exposure to anhydrous ammonia in the tank. The tank contained a freeze line, consistent with a tank containing anhydrous ammonia. Harcrow, who smelled the contents of the tank, testified that he was one-hundred percent sure it was anhydrous ammonia. The jury believed Harcrow, and Harcrow's testimony constituted substantial evidence to support the jury's verdict.

Affirmed.