NOT DESIGNATED FOR PUBLICATION

No. 117,800

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ETHAN D. BENNETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed April 13, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

PER CURIAM: Ethan D. Bennett was convicted of felony possession of methamphetamine, misdemeanor possession of marijuana, and misdemeanor possession of drug paraphernalia. Bennett appeals on two issues: (1) The conviction must be overturned because the timing of the trial violated his statutory right to a speedy trial, and (2) the State presented insufficient evidence for a finding of guilt beyond a reasonable doubt. We disagree and affirm.

Beginning in January 2016, the Clay County Sheriff's Department began conducting trash pulls and surveilling a residence in Clay Center. Cassie Kerr lived there with her husband, Greg Baxter, and her father, Kenneth Baker. During this time, the

1

department received complaints and information about that residence and observed much traffic in and out of the home. On February 19, 2016, the sheriff's department executed a search warrant for the residence.

Upon arrival, Undersheriff Jim Bogart first noticed the pickup truck, which was included in the search warrant, parked by the detached garage. As Bogart approached the truck, the dome light turned on and he saw two people inside. Kerr exited the driver's side of the truck as Bennett exited the passenger side. Kerr approached Bogart but Bennett walked around the corner of the garage, disappearing out of Bogart's sight for a few seconds. Bogart immediately passed Kerr off to the officer behind him and continued to the truck. As he reached the passenger side, Bennett walked back from the side of the garage. Bogart handcuffed him and placed him in the back of another officer's vehicle.

The truck and garage were only a couple of feet apart. There were some old tires, a mower, a gas can, and some other items against the garage. The old tires were right near where Bennett had been standing. Inside one tire, Bogart found a black cloth bag with white drawstrings. He noted the tires were dusty and had leaves on them. The tire that contained the bag also had standing water inside. However, the bag was not wet or dirty. Because the bag was located on the curtilage of the property listed on the warrant, Bogart did not ask permission before searching it.

Inside the bag, Bogart found a plastic pencil case, large work gloves, men's deodorant, and an unopened bag of sunflower seeds. Inside the pencil case, Bogart found a red and white bandana wrapped around a green glass bulbed pipe, which later tested positive for methamphetamine. He also located a multicolored glass pipe that smelled of burnt marijuana. The pipe later tested positive for THC. There was also a prescription pill bottle with the name torn off, a cut-off portion of a red straw with white residue on it, and a safety razor blade.

2

Inside the house, Kerr spoke with Deputy Jeff Browne. Kerr was unaware that deputies had found the black bag outside. Browne asked Kerr if Bennett had a bag with him. She replied that he may or may not have had his bag. She did not know because it was dark outside and his bag was dark. She stated that Bennett typically carried a black cloth bag with white drawstrings.

Kerr was subsequently arrested for items seized from the residence. At the jail, Browne presented Kerr with the evidence custody sheet, the list of items seized in the warrant execution, and asked her to initial beside the items that belonged to her. Kerr initially took credit for the bag, but she eventually told Browne that it was not hers but it could belong to Bennett. She took responsibility for several items on the list but none of the items from the black bag. Kerr testified that she had not seen Bennett with his bag since February 19, 2016.

Bennett testified that on February 19, 2016, he was helping Kerr gather items for a benefit auction for her mother. He had been at the residence a couple of times that day. When police arrived, he and Kerr were getting ready to go to a meeting with Officer Troy Jackson. Bennett denied carrying his bag that day and agreed that he had one similar to the one found. He denied ever seeing the bag that Bogart found. Further, Bennett testified that he was surprised when the deputies pulled up when he and Kerr were getting ready to leave. He walked around the corner of the garage to see what was going on and when he saw another officer coming down the alley, he turned and walked back toward Bogart.

The State filed the complaint against Bennett, alleging possession of methamphetamine, marijuana, and drug paraphernalia, on February 24, 2016. At the arraignment on August 8, 2016, Bennett pled not guilty and the district court scheduled the jury trial for November 29, 2016, informing Bennett that his case was the fourth setting scheduled on that date. At the pretrial hearing on November 3, 2016, both parties were prepared to proceed to trial. At that point, Bennett's case was the third setting on the

3

trial date but the court noted it was possible for the other matters to be resolved prior to that date.

On November 29, 2016, Bennett's trial was the second setting. The district court stated that it was unable to schedule the trial within the 180-day statutory limit because of the court's schedule. The first date available for a first setting was within 30 days of the 180-day limit. Both parties agreed with the court that the 180 days ran on February 18, 2017. The court scheduled the trial for February 28, 2017. Neither party objected.

Following the trial on February 28, 2017, the jury found Bennett guilty of all three counts. Bennett timely appeals his convictions, claiming the district court violated his statutory right to a speedy trial and the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.

Bennett first argues the district court violated his statutory right to a speedy trial as set forth in K.S.A. 2017 Supp. 22-3402.

*Standard of Review*

A potential violation of the statutory right to a speedy trial is an issue of law, over which this court has unlimited review. *State v. Dean*, 42 Kan. App. 2d 32, 36, 208 P.3d 343 (2009) (citing *State v. Brown*, 283 Kan. 658, 661, 157 P.3d 624 [2007]). Moreover, this court maintains unlimited review when such a claim requires statutory interpretation. *Dean*, 42 Kan. App. 2d at 36 (citing *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 [2008]).

*Discussion*

Generally, parties cannot raise issues for the first time on appeal. S*tate v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). There are three exceptions to that rule: (1) The newly asserted theory involves only a question of law arising from the facts and is case determinative; (2) consideration of the new theory is necessary to serve the ends of justice or prevent the denial of fundamental rights; and (3) the district court's determination was right for the wrong reasons. 299 Kan. at 493. Bennett asserts that this challenge presents a question of law arising from proven facts and that Bennett's right to a speedy trial is a fundamental right that the court denied him.

This court has previously declined to consider the issue of statutory speedy trial for the first time on appeal when the appellant's failure to raise the issue at the district court made the record insufficient for review. *State v. Crawford*, 46 Kan. App. 2d 401, 409, 262 P.3d 1070 (2011), *aff'd* 300 Kan. 740, 334 P.3d 311 (2014). The *Crawford* court found that the appellant's attempt to turn the insufficient record to his advantage, after he failed to address the issue previously, did not comport with the notion that consideration was necessary to serve the ends of justice. 46 Kan. App. 2d at 409. Bennett could have properly preserved the issue for appeal, but failed to do so. However, unlike *Crawford*, the district court here made sufficient findings on the record as to the necessity of the continuance.

*K.S.A. 2017 Supp. 22-3402*

According to K.S.A. 2017 Supp. 22-3402(b), the district court has 180 days from arraignment to hold the trial for any defendant held on an appearance bond. If the court fails to hear the case in time, it must discharge the defendant of liability for the charged crime unless the defendant caused the delay or the court grants an extension under K.S.A. 2017 Supp. 22-3402(e). According to K.S.A. 2017 Supp. 22-3402(e)(4), the district court

5

may grant a continuance for no more than 30 days because of its own busy dockets. *Dean*, 42 Kan. App. 2d at 37. Kansas courts have construed the 30-day extension to mean "to a date not more than thirty days after the limit otherwise applicable," which is the end of the 180 days, not the date the court orders the extension. *State v. Mansaw*, 32 Kan. App. 2d 1011, 1021, 93 P.3d 737 (2004) *aff'd and adopted* 279 Kan. 309, 109 P.3d 1211 (2005) (quoting *State v. Coburn*, 220 Kan. 750, 753, 556 P.2d 382 [1976]).

In making appropriate findings for an extension, the district court need not explicitly invoke the 30-day continuance rule and may do so on its own, without a formal hearing. *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 441, 8 P.3d 3 (1999) (citing *State v. Steward*, 219 Kan. 256, 261-62, 547 P.2d 773 [1976]). Here, at the status hearing on November 29, 2016, the original trial date, the district court stated:

> "The Court is unable to schedule this case within the 180 days without making the 30 day finding. Due to the Court's schedule, there's just no possibility of scheduling the case earlier. This is the first date I've got available for a first setting, and it's within the 30 days after the 180 day runs on February 18th based on the Court's calculations."

The district court explicitly invoked the K.S.A. 2017 Supp. 22-3402(e)(4) extension. The trial was set out to February 28, 2017, within 30 days of the 180-day limit. The district court contended that the 180 days ended on February 18, 2017, and the parties agreed to the court's calculations. In his brief, Bennett contends that the 180 days ran on February 14, 2017. This is inconsequential because the trial took place within 30 days of both dates. Because the district court made sufficient findings for the extension and heard the case within 30 days of the 180-day speedy trial limit, it did not violate Bennett's speedy trial rights.

Bennett next argues there was insufficient evidence to support his conviction for possession of the items found in the black bag.

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, "[a]fter reviewing all the evidence in a light most favorable to the prosecution, the appellate court must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014). Circumstantial evidence is sufficient for conviction as long as it provides a reasonable basis from which the fact-finder may reasonably infer each element. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). "It is only in rare cases in which trial testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Ramirez*, 50 Kan. App. 2d 922, 936, 334 P.3d 324 (2014). See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983), *State v. Naramore*, 25 Kan. App. 2d 302, 322-23, 965 P.2d 211 (2009).

*Discussion*

Bennett contends the jury convicted him based on inferences that he owned the black bag due to his proximity to the bag. He asserts the circumstantial evidence only presents inferences that have to be stacked upon each other to reach a guilty verdict. When a fact is established by circumstantial evidence, the circumstances must be proven and cannot be inferred from other circumstances. *State v. Taylor*, 34 Kan. App. 2d 889, 891, 126 P.3d 437 (2006). If a fact is proven through circumstantial evidence, the jury may then draw reasonable inferences from it. 34 Kan. App. 2d at 891.

The Kansas Supreme Court has determined that when a defendant does not have exclusive control of the premises upon which drugs are found, other incriminating circumstances must link the defendant to the drugs. *State v. Keel*, 302 Kan. 560, 567, 357

7

P.3d 251 (2015). Other factors include: (1) the defendant's history of sales or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) whether the drugs were found in plain view; and (4) the defendant's incriminating statements or suspicious behavior. 302 Kan. at 567-68.

In response to Bennett's motion for acquittal, the district court addressed the above factors. The court noted that the State did not present any evidence of previous drug activity to satisfy the first factor. Bennett was in very close proximity to the area where Bogart found the bag. Bogart testified that there were only a couple feet between the truck and the garage. The bag was inside a tire leaned against the garage, which was essentially at Bennett's feet.

Regarding the third factor, the district court pointed out that the drugs were not in plain view, but the bag containing them was. Finally, Bennett did not make any incriminating statements; however, the court considered his behavior "sort of suspicious" when he disappeared around the garage when the sheriff's deputies arrived. Bennett testified that he went around the garage to see what was going on. When he saw officers approaching down the alley, he returned. At the same time, Kerr got out of the truck and walked straight to the deputies in the yard.

Further, the area was covered in dirt and leaves. The tire had standing water in it. The bag, though in the tire, was not wet and did not have dirt or leaves on it. This court has considered similar factors to link a baggie of drugs to the defendant when the baggie was located in the path taken by the defendant, on top of the leaves, and was not weathered at all. *State v. Johnson*, 33 Kan. App. 2d 490, 502-03, 106 P.3d 65 (2004). In addition, though Kerr never stated with certainty whether Bennett had his bag that night, she described his bag as a black cloth bag with white drawstrings, which described the bag that Bogart had found.

8

The circumstances of the bag's location, condition, proximity to Bennett, and the matching description to the bag Bennett had been known to carry had been proven. Any inferences drawn based on those facts are sufficiently supported by substantial evidence. The jury had a reasonable basis for determining Bennett was guilty beyond a reasonable doubt.

Affirmed.