NOT DESIGNATED FOR PUBLICATION

No. 119,854

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN R. RICKE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed May 29, 2020. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

BUSER, J.: John R. Ricke was convicted of aggravated indecent liberties with a child under the age of 14 (aggravated indecent liberties) and sentenced to life in prison without the possibility of parole for 25 years. Ricke raises five issues on appeal. First, he contends there was insufficient evidence to prove his conviction for aggravated indecent liberties. Second, Ricke asserts that K.S.A. 2019 Supp. 60-455(d) is unconstitutional. Third, he claims a State's witness improperly testified that Ricke was guilty of the crime. Fourth, Ricke contends the prosecutor in closing argument improperly bolstered the

credibility of the child victim. Finally, Ricke claims that cumulative errors require reversal of his conviction.

Upon our review of the appellate briefs and the record on appeal, we find no error. Accordingly, we affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

B.D. (13 years old) and S.D. (8 years old) are brothers. On Christmas night 2017, the brothers and their parents celebrated the occasion with the boys' grandparents and a cousin, Ricke. Upon returning home, an argument occurred between B.D. and his mother because B.D. secretly had received a cellphone from Ricke. During the argument, B.D.'s mother told him that he was grounded and, as a result, he would not be able to visit his grandparents or Ricke. In response, B.D. yelled at his mother that he did not care because he "hate[d] Johnny."

In response to his mother's inquiries, B.D. disclosed that Ricke had raped him. Later that evening, the parents also spoke with S.D. who told them that Ricke had sexually assaulted him. Law enforcement officers were promptly contacted.

During an interview with Wichita Police Detective Crystal Schell of the Exploited and Missing Children Unit, S.D. reported that in October Ricke had put his "crotch" in the hole in S.D.'s "butt," placed his mouth on S.D.'s crotch, and moved his hand on S.D.'s crotch while the two individuals were naked on Ricke's bed.

Ricke was charged with two counts of aggravated sodomy with B.D. in violation of K.S.A. 2017 Supp. 21-5504(b)(1) and (c)(3), one count of aggravated indecent liberties with S.D. in violation of K.S.A. 2017 Supp. 21-5506(b)(3)(A) and (c), and one

2

count of aggravated sodomy with S.D. in violation of K.S.A. 2017 Supp. 21-5504(b)(1) and (c)(3).

At trial, B.D. and S.D. testified to numerous sexual acts perpetrated by Ricke. Videotaped interviews of the brothers recounting some of the sexual acts were also shown to the jury. Additionally, the boys' older brother testified that in September 2018 Ricke told him that he had sexual relations with B.D. and S.D., which Ricke characterized as "bro sex."

By agreement of the parties, a stipulation was given to the jury stating that on January 12, 2015, Ricke had previously pled guilty to and was convicted of sexual exploitation of a child. This conviction was for Ricke's possession of a visual depiction of two nude males who appeared under the age of 12 engaged in a sexual encounter. There was also trial testimony that Ricke showed S.D. and B.D. child pornography.

Ricke's girlfriend testified on behalf of the defense. She stated that she was in a relationship with Ricke at the time B.D. and S.D. reported the sexual abuse. According to the girlfriend, Ricke is impotent and, as a result, he is physically unable to have sex.

At the conclusion of the jury trial, Ricke was convicted of one count of aggravated indecent liberties with S.D. He was acquitted of both counts of aggravated sodomy with B.D. The count of aggravated sodomy with S.D. resulted in a mistrial. This count was later dismissed by the State.

Prior to sentencing, Ricke filed a motion for new trial, a motion for judgment of acquittal, and a motion for a departure sentence. The district court denied the motions. Ricke was sentenced to life in prison without the possibility of parole for 25 years. He filed a timely notice of appeal.

For his first issue, Ricke contends there was insufficient evidence to support his conviction for aggravated indecent liberties with S.D. He makes two arguments. First, he asserts that because the verdict form for the offense included language stating that Ricke touched S.D.'s penis, the State was required to prove—but failed to prove—that Ricke touched S.D.'s penis. Second, Ricke notes that the information filed in this case stated that at the time of the commission of the crime S.D. was not married to Ricke. Ricke argues that there was no evidence presented at trial to support this assertion and, therefore, claims the State failed to provide sufficient evidence of the crime. We will consider each argument separately.

Our standard of review provides:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

*Whether there was sufficient evidence that Ricke touched S.D.'s penis.*

At the outset, we first address Ricke's contention that because the aggravated indecent liberties verdict form contained the words "([S.D.], touching penis)," the State was required to prove that specific touching as an element of the offense. In order to analyze this issue, it is necessary to review the information, elements instruction, and verdict form relating to the aggravated indecent liberties charge.

4

In relevant part, the information alleged that Ricke "did then and there unlawfully engage in lewd fondling or touching of a child who was under fourteen (14) years of age, to wit: [S.D.], eight (8) years of age, . . . who was not then married to [Ricke], done or submitted to with the intent to arouse or satisfy the sexual desires of the child, the defendant or both."

Jury Instruction No. 9 advised the jury of the several elements of aggravated indecent liberties relating to S.D. and informed the jury that "[t]o establish this charge, each of the following claims must be proved." The first element was: "The defendant engaged in lewd fondling or touching of [S.D.]." The instruction also provided this definition: "Lewd fondling or touching means fondling or touching in a manner which tends to undermine the morals of a child and is so clearly offensive as to outrage the moral sense of a reasonable person. Lewd fondling or touching does not require contact with the sex organ of one or the other."

Finally, the verdict form relating to the charge upon which the jury found Ricke guilty stated: "We, the jury, find the defendant guilty of aggravated indecent liberties with a child ([S.D.], touching penis)." Of note, in the district court Ricke did not object to the information, Jury Instruction No. 9, or the verdict form.

The crux of Ricke's argument is that the State was required to prove not only the lewd fondling or touching as charged in the information and as set forth in the elements instruction but, based on the language of the verdict form, the State was required to also prove that Ricke's lewd fondling or touching consisted of him touching S.D.'s penis. Moreover, since Ricke claims there was insufficient evidence that he touched S.D.'s penis—despite evidence that he fondled and touched S.D.'s crotch—he argues the State failed to prove the crime of aggravated indecent liberties.

5

Importantly, Ricke does not favor us with any on-point precedent in support of his novel argument. Moreover, our review of Kansas caselaw does not reveal any authority to support Ricke's contention that the language of the verdict form controls the sufficiency of the evidence for a conviction. On the contrary, the typical sufficiency challenge is "whether the State's proof measured up under the elements instruction given for a crime." *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018). Additionally, our Supreme Court has reviewed the insufficiency of evidence to support the alternative means of a crime charged rather than the one instructed on. See 308 Kan. at 664.

But neither of these two scenarios are presented in this appeal. Here, Ricke was charged with aggravated indecent liberties in the context of lewd fondling or touching. The elements instruction controlled the jury's verdict on whether lewd fondling and touching occurred. In short, regarding the element of lewd fondling or touching, there was no disconnect or variance between the crime charged and the crime instructed on. Additionally, the verdict form properly referenced the crime of aggravated indecent liberties which was the crime charged and the crime instructed on. The addition of the identifying language "([S.D.], touching penis)" was also consistent with the definition of lewd fondling or touching as provided in Instruction No. 9.

Ricke has failed to show as a matter of law that the verdict form established or defined the State's burden of proof. On the contrary, the information and elements of the crime as set forth and defined in Instruction No. 9 established the basis for the State's burden of proof. The jury considered the individual elements set forth in Instruction No. 9, and the district court's directive "[t]o establish this charge, each of the following claims must be proved" in order to arrive at a guilty verdict. In this way, the jury decided that the State had met its burden of proof beyond a reasonable doubt. On the other hand, the verdict form merely memorialized the jury's decision rendered after it considered the elements of the crime as set forth in Instruction No. 9.

Not only has Ricke failed to show as a matter of law that the verdict form in this case determined the State's burden of proof, his underlying premise—that the State did not prove that he touched S.D.'s penis—is contrary to the trial evidence.

In support of his claim of insufficient evidence, Ricke asserts that S.D. never used the term "penis" when describing the sexual acts. S.D. only stated Ricke touched his "crotch." Ricke asserts that crotch does not necessarily mean that he touched S.D.'s penis, as a person can touch genitalia associated with a crotch apart from the penis. He argues that the only way the trial evidence supports a conviction of aggravated indecent liberties is through impermissible inference stacking of the evidence.

Under K.S.A. 2019 Supp. 21-5506(b)(3)(A),

> "aggravated indecent liberties with a child is defined, in relevant part, as: 'Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both,' when the child is less than 14 years old." *State v. Boysaw*, 52 Kan. App. 2d 635, 639, 372 P.3d 1261 (2016), *aff'd* 309 Kan. 526, 439 P.3d 909 (2019).

Upon our review of the trial testimony and exhibits, we are convinced that when S.D. used the term "crotch" he meant "penis." At trial, the State played the videotape of the initial interview of S.D. by Detective Schell that occurred two days after the sexual assault allegations came to light. During that interview, S.D. looked at an anatomical diagram and referred to the male genitalia, on the front of the body, as a "crotch." S.D. labeled the back side or buttocks of the male diagram as a "bottom." During the interview, S.D. stated that in October 2017, while Ricke and S.D. were naked on Ricke's bed, Ricke touched S.D.'s crotch with his hand. When asked what Ricke's hand was doing at that time, S.D. stated, "[J]ust grabbing it" and that Ricke's hand was moving. According to S.D., a person is not supposed to touch a boy's crotch or butt.

S.D.'s understanding of the word crotch as meaning a penis was also evident during the interview when S.D. was discussing anal sodomy. S.D. related that on a second occasion in October when Ricke and S.D. were naked on Ricke's bed, Ricke put "his crotch in S.D.'s butt." When asked if Ricke's crotch went in the hole "where the poop comes out," S.D. indicated that it did.

During Detective Schell's trial testimony, she recalled her interview with S.D.:

"[PROSECUTOR:] Then in [S.D.'s] interview he describes a couple different actions that occur. In one instance he describes his penis, [S.D.'s] penis, being touched by John Ricke, is that correct?
"[DETECTIVE SCHELL:] Yes.
"[PROSECUTOR:] That would be a type of lewd fondling or touching?
"[DETECTIVE SCHELL:] Yes."

In short, Detective Schell understood from S.D.'s statements made during the interview that his use of the term "crotch" was synonymous with the term "penis."

At trial, using an anatomical drawing, S.D. circled the area that he considered a crotch. This circled area included a drawing of a penis. As he had conveyed in the pretrial interview with Detective Schell, S.D.'s description of anal sodomy made clear that he used the term crotch to indicate penis. S.D. testified that on Christmas Day he told his parents that Ricke "put his crotch in my butt." S.D. told the jury that Ricke's crotch would "stick in my butt. . . . It hurt."

When the prosecutor asked, "What does [Ricke] tell you?" S.D. answered, "Um, he just said—just tell you [*sic*] when it hurt." When the prosecutor asked S.D. if he ever told Ricke that it hurt, S.D. replied, "Yes." The prosecutor also discussed the anatomical diagram of a male buttocks with S.D. The prosecutor asked, "On the butt there is a line,

8

then there is also a hole there. When Johnny's crotch would go in your butt, would it go just in the line or would it go into the hole as well?" S.D. replied, "The hole."

Finally, during the trial, S.D. related an instance of oral sodomy on the same day as the anal sodomy. S.D. testified that Ricke "put my crotch in his mouth."

Based on S.D.'s testimony regarding both the sodomy charge and the aggravated indecent liberties charge, the jury was able to draw a reasonable inference that in S.D.'s vernacular, crotch meant penis. As a result, the aggravated indecent liberties conviction was the result of the jury drawing a reasonable inference from the evidence presented. Moreover, this was not the result of inference stacking as argued by Ricke because "there is no impermissible stacking of inferences if each element of the crime charged is supported by substantial evidence, either direct or circumstantial." *State v. Taylor*, 34 Kan. App. 2d 889, 891, 126 P.3d 437 (2006).

In summary, after reviewing all the evidence in a light most favorable to the prosecution, we are convinced a rational fact-finder could have found Ricke guilty beyond a reasonable doubt of aggravated indecent liberties based, in part, on the State's proof that Ricke touched S.D.'s penis. See *Chandler*, 307 Kan at 668.

*Whether the State was required to prove that Ricke and S.D. were not married.*

Next, Ricke points out that the aggravated indecent liberties charge in the information alleged that Ricke "did then and there unlawfully engage in lewd fondling or touching of a child who was under fourteen (14) years of age . . . *who was not then married to John R. Ricke.*" (Emphasis added.) Ricke contends that "[w]hile marriage is normally a defense, the State morphed the defense of marriage into an element of the crime by charging that [S.D.] and Ricke were not married." Ricke concludes his

argument: "Because no evidence presented at trial showed that [S.D.] was not married to Ricke, the aggravated indecent liberties conviction is supported by insufficient evidence."

Conversely, the State contends that marriage is always an affirmative defense, not a statutory element. Further, the State argues that all parties agreed to the jury instructions—which omitted this language—and the State proved the required statutory elements.

Once again, Ricke has presented us with a novel legal argument without providing any legal support for it. Ricke does not provide any valid statutory or caselaw authority for his position that the State's inclusion of the marriage language in the charging document "morphed" it into an element that needed to be proven at trial. Under the current aggravated indecent liberties statute, there are no elements of the crime relating to whether the accused and the child are married. However, the statute explicitly provides that marriage between the accused and the child may be a defense. K.S.A. 2019 Supp. 21-5506(e). Of course, Ricke did not present this affirmative defense at trial—his defense was that he did not commit the crime at all.

K.S.A. 22-3201(b) only requires that the charging document include essential facts and that it reflects the language of the statute. Under K.S.A. 22-3201(d), the district court was allowed to strike any language that was surplusage. *State v. Vakas*, 242 Kan. 103, 106, 744 P.2d 812 (1987) ("While it is true that the word legitimate is not contained in the statute, we are of the opinion that its use in the indictment does not change the elements of the crime, charge a different crime, fail to state a crime, or lessen the State's burden of proof."); *State v. Glazer*, 223 Kan. 351, 359, 574 P.2d 942 (1978) ("Surplusage in the information may be disregarded. We do not feel that defendant was prejudiced in his defense even though the information set forth many unessential facts.").

In the present case, the State charged Ricke with the appropriate statutory language and Instruction No. 9 matched the statutory elements of the offense. See K.S.A. 21-5506(b)(3)(A). At the beginning of trial, the district court read the elements of each charge against Ricke. In its reading, the district court did not include the surplus language that Ricke was not married to S.D. at the time of the offense. Instead, the district court read the elements to the jury as defined by statute and as later provided in Instruction No. 9.

We agree with the State that "[t]he State lacks the power to transform an affirmative defense into a statutory element of a crime. The elements for the offenses of which the criminal code is comprised are dictated by statute, the determination of which lies solely within the bailiwick of the legislature." Moreover:

> "'The general rule has always been in Kansas that the accused has the burden of introducing evidence as a matter of defense that he is within an exception or exemption in the statute creating the offense, where such exception or exemption is not part of the description of the offense. Accordingly, the prosecution has no duty to prove on its case in chief that the accused is not within the exception.' [Citation omitted.]" *State v. Gunn*, 29 Kan. App. 2d 337, 341, 26 P.3d 710 (2001).

We hold the surplus language contained in the information did not transform the statutory affirmative defense into an element of the crime. As a result, the State was not required to prove beyond a reasonable doubt that Ricke and S.D. were not married at the time of the commission of the aggravated indecent liberties.

In conclusion, regarding both arguments presented by Ricke, after reviewing all the evidence in a light most favorable to the prosecution, we are convinced a rational fact-finder could have found Ricke guilty beyond a reasonable doubt of the crime of aggravated indecent liberties. See *Chandler*, 307 Kan at 668.

11

AS APPLIED TO RICKE IS K.S.A. 2019 SUPP. 60-455(d) UNCONSTITUTIONAL?

Next, Ricke presents the following contention: "Under K.S.A. 60-455(d), character evidence regarding the defendant's sexual misconduct starts off as admissible for the State. But, under K.S.A. 21-5502(b), character evidence regarding the alleged victim's sexual conduct starts off as inadmissible for the defendant. This difference in starting points contravenes the due process protection of reciprocity."

A brief summary of the procedural background relating to this issue is in order. Prior to trial, the State filed a motion to admit K.S.A. 60-455 evidence at trial. This evidence consisted of Ricke's guilty plea and prior conviction in 2015 for sexual exploitation of a child. The conviction was for Ricke's possession of a visual depiction of two nude males, apparently under the age of 12, engaged in a sexual encounter. At that hearing, defense counsel opposed the motion but, out of concern regarding the potential extent of the State's evidence to prove the prior crime, offered to agree to a written stipulation that essentially informed the jury that Ricke had pled guilty and was convicted of the sex offense.

The district court concluded that evidence of the prior crime was admissible. See K.S.A. 2019 Supp. 60-455(d). Finally, the district court found that the probative value of the evidence outweighed its prejudicial effect. By agreement of the State and Ricke, the stipulation was read to the jury during trial.

Preliminarily, we are persuaded this issue was not preserved for appellate review. Ricke candidly concedes that he did not raise the issue of the constitutionality of K.S.A. 2019 Supp. 60-455(d) in the district court. Indeed, not only did Ricke not contemporaneously object to this evidence at trial for any reason, but he jointly agreed to submit the stipulation of the prior sex crime evidence for the jury's consideration.

12

K.S.A. 60-404 provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

See *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 25, 327 P.3d 1014 (2012). By stipulating to the evidence rather than objecting to it, Ricke failed to comply with the provisions of K.S.A. 60-404.

There is a second reason this issue is not properly before us. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). The due process claim Ricke raises for the first time on appeal was never mentioned in the district court and, therefore, is not appropriate for our review.

There are three exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (stating exceptions). Ricke submits that he meets two of the exceptions that allow this court to consider this issue for the first time on appeal:  (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, and (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. Ricke's understanding of the preservation exceptions is overbroad and essentially renders the preservation rule meaningless. See *State v. Richmond*, 289 Kan. 419, 430, 212 P.3d 165 (2009).

Upon our review, neither of these two exceptions are applicable in this appeal. Regarding the first exception, Ricke's new theory would not be finally determinative of

13

the case. Assuming Ricke's prior conviction for sexual exploitation of a child was inadmissible, the extent of the error would still require consideration of the totality of the trial evidence to determine if it was harmless error. See *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]); *Richmond*, 289 Kan. at 429 ("At a minimum, the magnitude of any evidentiary error would still have to be determined by reviewing all other evidence under either the state standard, the federal standard, or both.").

As to the second exception, it is apparent that consideration of this evidentiary issue is not necessary to serve the ends of justice or to prevent the denial of fundamental rights. As our Supreme Court stated 10 years ago: "In recent years, however, we have consistently been refusing to review an evidentiary issue without a timely and specific objection *even if the issue involves a fundamental right.*" (Emphasis added.) *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

Moreover, this is not a case where differing evidentiary standards were applied to Ricke and B.D. or S.D. Ricke acknowledges on appeal that he "never desired to introduce any type of sexual character evidence against [B.D.] or [S.D.]." In other words, as the State argues, Ricke seeks an advisory opinion regarding the constitutionality of K.S.A. 2019 Supp. 60-455(d) generally, not as applied to him in this trial. Of course, Kansas appellate courts do not render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012).

For all the reasons discussed above, we conclude this issue was not preserved for appellate review.

DID DETECTIVE SCHELL ERRONEOUSLY TESTIFY THAT RICKE WAS GUILTY?

Ricke asserts that Detective Schell erroneously offered a legal opinion that he was guilty of aggravated indecent liberties. According to Ricke, this testimony invaded the province of the jury and was either structural error or trial error that was not harmless.

The State counters that Ricke failed to state a contemporaneous objection to this trial testimony, thus precluding appellate review. Additionally, as to the merits, the State argues there was no structural error and, if there was trial error, it was harmless.

At trial, the State asked Detective Schell about some statutory definitions and certain conduct that constitutes those crimes.

"Q. . . . [A]re you familiar with what the definition of sodomy is in Kansas?

"A. Yes.

"Q. Does the definition of sodomy include penetration of a person's anus by another object?

"A. Yes.

"Q. It could be penetration by a penis or finger or anything like that?

"A. That is correct.

"Q. Does sodomy also include oral sex?

"A. Yes.

"Q. So someone putting their mouth on another person's penis would be sodomy?

"A. Yes.

"Q. Then in [S.D.'s] interview he describes a couple different actions that occur. In one instance he describes his penis, [S.D.'s] penis, being touched by John Ricke, is that correct?

"A. Yes.

"Q. That would be a type of lewd fondling or touching?

"A. Yes."

Ricke acknowledges that he failed to object to any of this testimony at trial, but he still argues that the testimony was structural error that violated his right to a fair trial.

We see no purpose in reprising our prior analysis regarding the need for compliance with K.S.A. 60-404 in matters governing the admissibility of evidence. It is uncontroverted that Ricke did not object to any of the testimony that he now complains of on appeal. Although he claims it was structural error, he provides no on-point Kansas caselaw applying structural error to an issue involving an improper admission of evidence at trial. Ricke also does not claim an exception to the general rule that evidence not objected to at trial may be considered on appeal. This issue was not preserved for appeal and we decline to consider it.

If we were to address the merits, we pause to note that, contrary to Ricke's assertion, Detective Schell did not state an opinion that Ricke was guilty of any of the crimes charged. Relevant to the aggravated indecent liberties charge involving S.D., the detective was asked whether the kind of touching described by S.D. "would be a type of lewd fondling or touching?" The detective replied, "Yes."

Without ruling on the propriety of the prosecutor's question, we observe that Detective Schell was simply commenting on one specific type of touching that, in her lay opinion, was within the broad and generalized category of lewd fondling or touching. Importantly, this was the only element of the crime of aggravated indecent liberties—which obviously has several distinct elements—of which the detective testified. At no time did she express an opinion that Ricke was guilty of the charged crime. See *State v. Steadman*, 253 Kan. 297, 304, 855 P.2d 919 (1993) (Police witnesses "cannot testify that in their opinion the defendant was guilty of the crime.").

Finally, as discussed earlier in Ricke's first appellate issue, there was abundant evidence, both direct and circumstantial, to prove that Ricke's touching of S.D.'s crotch

was lewd fondling or touching done with the intent to arouse or to satisfy Ricke's sexual desires. Any error was plainly harmless. See *State v. Englehardt*, 280 Kan. 113, 130, 119 P.3d 1148 (2005) (reversal is required only where an erroneous admission of evidence "'is of such a nature as to affect the outcome of the trial and deny substantial justice'").

PROSECUTORIAL ERROR DURING CLOSING ARGUMENT

Ricke contends the "State erred in repeatedly asking the jury, in one way or another, why its child witnesses would lie. Through these questions, the State implied that [B.D.] and [S.D.] testified to the truth, going outside the wide latitude afforded to prosecutors during closing arguments." Ricke concedes he failed to object to any of the statements at trial, but he correctly states that an objection is not required to preserve the issue for appeal.

The State responds that the prosecutor's statements were in response to defense counsel's assertion that the complaining witnesses were lying. According to the State, a prosecutor is given wide latitude to explain to a jury what it should look for when determining credibility.

During the prosecutor's initial closing argument, the prosecutor did not mention the issue of the credibility of S.D. or B.D. During the defense's closing argument, defense counsel stated, "You have a boy who gets in trouble who makes allegations, makes them in front of his brother who also says, yeah, it happened to me. That's it. And every other piece of evidence that they whittled together is uncorroborated. It's not corroborated by anything."

Defense counsel commented on S.D.'s version of events and insinuated that he repeated facts he heard from B.D. because they were about to get in trouble for having a cell phone. "[The mother s]aid all the other children left, but what did [S.D.] tell us?

17

[S.D.] told us that he sat there, that he listened to what [B.D.] had said and then after that he then tells his parents, his father, that [Ricke] molested him." Defense counsel then challenged B.D.'s credibility by stating that he was inconsistent in describing the dates the offenses were committed.

In rebuttal, the prosecutor responded to defense counsel's critique of the boys' testimony:

"You saw the demeanor, the body language, how these two boys were acting. Not only when the first disclosure happened in December when they were describing it to law enforcement, when [B.D.] was saying I just want out of here, I don't want to talk anymore, covering his head with his hoodie, burying his face. If he's not describing an event that actually happened to him, what's going on there?

"Ultimately, what are the possible explanations if it didn't actually happen? Well, first off, it did happen. Is he describing the right person? He is describing someone he knows. He doesn't mistake anyone's identity.

"So if it didn't happen, if he's making it up, then why is he picking [Ricke] of everyone else in his life? The person who gives him additional presents, the person who puts money in his bank account, the person who lets him play on his Xbox, the person who lets him play video games. Why is he—if these events didn't actually happen, why he picking out [Ricke] as the person to be angry with? Why not his parents?

"Typical 13-year-old boy. Why is he lashing out at the cool cousin who lets him do anything he wants, play on his phone when his parents won't let him have a phone. Why doesn't he lash out against his parents instead of this man, instead of this man?

"When it comes to [S.D.] and the description that [S.D.] provides of these actions that happened against him, if [S.D.] is making it up, why? Why would an eight-year-old make up these allegations? Why would he say it's the same person? Why would he also say pornography was used when those attacks happened to him?"

The prosecutor further commented that if the boys were making the story up, they would have compared notes and told identical stories, yet each boy described the sexual acts differently.

18

Our standard of review provides that the appellate court uses a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

Generally, a prosecutor is prohibited from expressing personal opinions on the credibility of a witness because such comments are "unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000). However, prosecutors are permitted to make statements that draw reasonable inferences from the evidence. *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 (2011).

On appeal, Ricke complains that "the gist of the State's argument was that its child witnesses told the truth. . . .While framed as questions, the take away from the State was that its witnesses were telling the truth."

Ricke misconstrues what constitutes prosecutorial error in this regard. As our Supreme Court has stated, while in general, prosecutors may not offer juries *their personal opinions* as to the credibility of witnesses: "The latitude given to the State includes 'explaining to juries what they should look for in assessing witness credibility,

19

especially when the defense has attacked the credibility of the State's witnesses.'" *State v. Sprague*, 303 Kan. 418, 428-29, 362 P.3d 828 (2015) (quoting *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 [2009]).

In this case, the prosecutor asked the jury to consider the demeanor, body language, and reluctance of the boys while telling Detective Schell about the sexual assaults. The prosecutor also suggested that since Ricke provided the boys with gifts and privileges, they had no reason to be angry with him and, as a consequence, lie about the sexual assaults. What were the boys' motives except to truthfully disclose Ricke's sexual assaults? Moreover, the prosecutor argued that if the boys were engaged in a conspiracy to lie about the sexual assaults, their details of the assaults would have been—unlike their testimony—exactly the same. In short, the minor inconsistencies in certain aspects of the boys' testimony suggested credibility rather than dishonesty. Finally, the prosecutor noted the evidence that Ricke showed S.D. and B.D. child pornography. Given the stipulation regarding Ricke's prior sex crime, this evidence circumstantially corroborated the brothers' testimony and credibility.

Here, the prosecutor did not express her personal opinion as to the credibility of S.D. and B.D. Rather, the prosecutor appropriately highlighted the many factors that, taken together, indicated the boys testified truthfully regarding Ricke's sexual assaults. This was not prosecutorial error, it was permissible trial advocacy.

Finally, assuming there was error, it was harmless as it is apparent the jury carefully and separately considered S.D.'s and B.D.'s credibility. The jury acquitted Ricke on both charges related to B.D. and the sodomy charge related to S.D. resulted in a mistrial. Regarding its not guilty verdicts as to B.D., the jury was clearly not overborne by the prosecutor's rhetoric which Ricke complains was improper. The jury viewed both boys' interviews and their trial testimony. It had an excellent opportunity to consider first-hand the boys' credibility and arrive at a reasoned judgment.

20

Moreover, the district court gave the jury Instruction No. 4 which read: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." It is well-settled law that the jury is presumed to follow the district court's instructions. *State v. Cromwell*, 253 Kan. 495, 510, 856 P.2d 1299 (1993).

CUMULATIVE ERROR

For his last issue, Ricke contends the errors he has appealed from cumulatively result in reversible error. However, Kansas appellate courts will find no cumulative error when—as in this appeal—the record fails to support the errors defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

Affirmed.